189 P.2d 95

**In re ZEB'S ESTATE.**

No. 7399.

Supreme Court of Idaho.

Dec. 5, 1947.

Rehearing Denied Feb. 11, 1948.

568

Laurence E. Huff, of Moscow, for appellant.

Verner R. Clements, of Lewiston, and Roy A. Redfield, of Spokane, Wash., for Gothmann and others.

Robert W. Peterson, of Moscow, for Bingham and others.

MILLER, Justice.

A petition for probate of will, of the Estate of Joe Zeb, deceased, was filed in the Probate Court of Latah County, Idaho, November 30, 1942. From said petition it appears that said will was signed April 7, 1941, and that the said Joe Zeb, died on or about October 31, 1942, at Moscow, Latah County, Idaho, and at the time of his death he was a resident of Latah County, State of Idaho, and left estate in Latah and Benewah Counties, State of Idaho, consisting of real and personal property. It also appears from said petition that the said Joe Zeb, at the time he executed said will, the 7th day of April, 1941, was 53 years of age, was of sound and disposing mind and not acting under fraud, undue influence or duress of any person whatsoever, and in every way was competent to dispose of his estate by last will and testament. That at the time of his death, Valeria Zeb was the surviving wife of said decedent and was named in said will as the executrix thereof. That she is a resident of Latah County, State of Idaho, above the age of 21 years, qualified to act and consents to act, as the executrix of said will. That the names and residences

of the heirs, legatees and devisees are as follows: Valeria Zeb, surviving wife, Moscow, Idaho; Irene (Zeb) Forwood, daughter, Spokane, Washington; and Virginia Zeb, daughter, Spokane, Washington. That the will is in writing, signed by the testator and attested to and subscribed by witnesses at the request of the testator.

December 2, 1942, L. G. Peterson, Probate Judge, of Latah County, Idaho, made and filed an order admitting the aforementioned will to probate. Among other things it is shown in said order, that the will was dated April 7, 1941, filed in Probate Court November 30, 1942, and is admitted to probate as the Last Will and Testament of Joe Zeb, deceased. It is further ordered that Valeria Zeb, named in said will as executrix, be and she is hereby appointed executrix of the Last Will and Testament and that Letters Testamentary thereon be issued to her upon her taking the oath as required by law. The will was filed November 30, 1942, recorded in Book 17, at page 322, Record of Wills of said Latah County, Idaho. Paragraph "I" provides as follows:

"At the date of this instrument I am the husband of Valeria Zeb, my second wife. I have two children of a former marriage. Their names are Irene (Zeb) Forwood and Virgina Zeb. These are the daughters of my former wife, Mary Zeb, from whom I am divorced. A complete property settlement was made with her at the time of divorce, and no provision is made herein for her; such omission is not inadvertent."

By Paragraph "III. Specific Legacies: I give and bequeath the sum of Five ($5.-00) Dollars each to my two daughters, Irene (Zeb) Forwood and Virginia Zeb."

November 21, 1945, Irene Zeb Forwood and Virginia Zeb Ferrell, daughters and legatees of Joe Zeb, deceased, caused to be filed in the Probate Court of Latah County, State of Idaho, In the Matter of the Estate of Joe Zeb, deceased, an Amended Petition For Declaratory Judgment Construing Will. There is contained therein Paragraph V of the Last Will and Testament of Joe Zeb, deceased, as follows:

"V. Trust Provision: My principal asset is the controlling interest and shares of stock which I hold in Moscow-Idaho Seed Company. All my interest in such corporation, whether by shares of stock, right to receive shares or dividends, or otherwise, I give and bequeath to my wife, Valeria Zeb, in trust however, and not otherwise, for the uses and purposes herein specified. I direct that my wife as such trustee shall continue to operate the said business as a going concern, provided that it continues to be reasonably profitable as such, and the period of operation shall be for ten years following my decease. My wife as such trustee shall have and exercise all the powers which I might exercise if living and in possession of the same interest as exists at the time of my decease. But I specifically request of my trustee

that she continue to use and consult with the same business advisors whom I have employed during my lifetime, herein specifically referring to Kinman Morris Company, auditors, and Mr. LaVerne R. Palmer, who is in their employ. I also instruct my trustee to continue in service the same employees of the business who shall be in my service at the time when this will becomes effective, and to retain them so long as they merit employment on the ground of continued fidelity and efficiency. This provision shall not prevent my trustee from discharging them or any of them, however, if they make demands for unreasonable compensation or fail in their duties.

"The beneficiaries of this trust shall be, first and primarily my wife, and second and incidentally my employees aforesaid. All the profits of the business, as measured by earnings upon the stock bequeathed to my wife, shall enure to her benefit, and she may use the same freely and such income shall be her own property, up to a limit of $20,000.00 per year. After the profits upon my stock shall exceed $20,000.00 in any year, the excess of such sum shall be subject to division; my wife shall retain half of such excess and the other half shall be distributed among all the then employees of the business, in proportion to their current salaries. At the close of the ten years following my decease, my wife may then close the trust at once, or continue it, in her discretion. The stock may then be sold, or the business sold and liquidated,

and all net funds derived from such final liquidation after the expenses thereof have been met shall be the sole property of my said wife."

It is set out in said Amended Petition for Declaratory Judgment Construing Will, that the true name of the Moscow-Idaho Seed Co. referred to in Paragraph V of the Last Will and Testament of Joe Zeb, deceased, is "Moscow-Idaho Seed Co., Inc." That a certificate of incorporation was issued August 11, 1930, and that all of the shares of the stock of such corporation had been subscribed; that said corporation was capitalized for $100,000.00 and that the shares of stock were divided into two classes, namely: common and preferred; that there were 250 shares of common stock and 750 shares of preferred stock and that the estate of Joe Zeb, deceased, at the time of the filing of said amended petition owned 248 shares of the common stock and 750 shares of the preferred stock and was the separate property of Joe Zeb. It is also shown in said Amended Petition that Valeria Graser and Joe Zeb intermarried in the fall of 1935, and that Valeria Graser is the same person as Valeria Zeb, described as executrix of the Last Will and Testament of Joe Zeb, deceased, and that Valeria Zeb has remarried since the death of Joe Zeb and that her present name is Valeria Zeb Gothmann; that there were no children of the issue of the marriage of Valeria Graser and Joe Zeb. Said Amended Petition alleges that the terms of the

trust suspends the absolute power of alienation for a period longer than the continuance of lives of persons in being as of the date of the death of Joe Zeb and is in violation of Section 54-111, I.C.A., being the Idaho rule against perpetuities, and that the bequest in the trust provision is null and void and that Joe Zeb died intestate as to his shares of stock and his interest and ownership in the Moscow-Idaho Seed Co., Inc.

The Amended Petition contains a second and third separate cause for petition for Declaratory Judgment Construing Will. It will not be necessary to point out the matters and things contained in the second and the third cause for petition, as will later be made to appear. Demurrers to the amended petition for declaratory judgment construing will were filed and overruled and on December 21, 1945, an answer to the amended petition for Declaratory Judgment Construing Will, was filed and served. - On May 9, 1946, an order overruling demurrers of Valeria Zeb Gothmann, individually, and as executrix, as well as other defendants, was overruled. On said May 9, 1946, an order overruling in part and sustaining in part the demurrer of the plaintiffs Irene Zeb Forwood and Virginia Zeb Ferrell to the answer of the defendant Valeria Zeb Gothmann and others, was made and filed. June 3, 1946, an amended answer to the causes of action, set out in the amended petition, was filed and included therein were five separate affirmative defenses to petitioners' amended petition.

We think it is unnecessary to further mention said affirmative defenses as it appeared that subsequent agreements between the parties eliminated said defenses from consideration. A general demurrer, to the affirmative defenses, was filed by the plaintiffs and on July 1, 1946, the court made an order overruling said demurrer. By stipulation it was agreed that the cause was to be tried August 30, 1946. October 16, 1946, the Probate Judge, ordered, adjudged and decreed that the trust provision in Paragraph V., of the Last Will and Testament of Joe Zeb, deceased, violates Section 54-111, I.C.A., being the Idaho rule against perpetuities and that the trust of 750 shares of preferred stock and 248 shares of common stock in the Moscow-Idaho Seed Company, Inc., and the right to receive dividends therefrom is null and void and that Joe Zeb died intestate as to such shares of stock and that Irene Zeb Forwood, Virginia Zeb Ferrell and Valeria Zeb Gothmann are the heirs at law of Joe Zeb, deceased, and that the right to receive dividends therefrom descended to and vested in Irene Zeb Forwood, Virginia Zeb Ferrell and Valeria Zeb Gothmann as tenants in common, subject to the possessory right of Valeria Zeb Gothmann, executrix, of the estate of Joe Zeb, deceased, for the purpose of administration only of such es-

tate and that such shares of stock were the separate property of Joe Zeb, deceased, at the time of his death.

December 9, 1946, Valeria Zeb Gothmann, individually and as executrix and testamentary trustee of the Last Will and estate of Joe Zeb, deceased, and other defendants, made, served and filed notice of appeal to the District Court of the Second Judicial District of the State of Idaho, in and for the County of Latah, from the judgment made and entered October 16, 1946, in the Probate Court of Latah County, Idaho, purporting to be a declaratory judgment construing the last will and testament of Joe Zeb, deceased, upon the petition of Irene Zeb Forwood and Virginia Zeb Ferrell.

January 13, 1947, the parties herein stipulated that Hon. A. H. Featherstone should hear and determine all issues that may arise and that he shall forthwith be designated by the Hon. A. L. Morgan to hear and determine and preside in all matters in the above entitled matter, numbered 7067, and on said date an order to that effect was signed by Judge Morgan and filed in said proceeding.

January 24, 1947, the matter came on for trial before Hon. Albert H. Featherstone. Opening statements were made by respective counsel, and, after some proposals and the discussion thereof, it was stated by Mr. Clements, "That leaves as the issues here only the single issue, if it is allowed, of determining whether or not this fifth provision is in violation of the suspension of alienation statutes. With that done, there will be no occasion in this proceeding here to offer any evidence as to whether or not these shares of stock I have referred to are separate or community property. So, as I have said, it is our position now that there is but one issue to be determined—there is no issue for the reception of any evidence—and that is as to whether or not the fifth provision of the Will violates the statute." Mr. Huff objected to the proposition that the question of community property should be withdrawn from this proceeding only in that a withdrawal would amount to permitting an amendment of the pleading and he said: "It is necessary that I prove separate property in order to make my parties parties in interest." After further discussion, incident to said matter, Mr. Huff made the following inquiry: "You concede this 750 shares of preferred stock and 248 shares of common stock is the separate property of Joe Zeb for the purposes of this trial and also for all probate proceedings?" Mr. Clements: "That's right." Mr. Huff: "You will not raise the question of this on distribution? Mr. Clements: "That's right." Mr. Huff: "I didn't want this raised and have to go to the Supreme Court on petition for distribution." Accordingly, but a single issue is presented, that being whether or not the trust provision, being Paragraph V of the Will, violated the provisions of Section 54-111.

At the same time it was agreed that the demurrers filed in Probate Court against the petition and against the amended answer should be submitted to the District Court without further argument and the District Court dispose of the same at the time he makes his decision on the merits.

Witnesses were called, sworn and testified on behalf of the plaintiffs, Irene Zeb Forwood, Valeria Zeb Ferrell, Thomas F. McKenna and Walter Melgard. Plaintiffs offered Exhibits numbers 1, 2, 3, 4, 5, 6 and 8, which were admitted, and 7, 9, and 10, which were rejected. It was stipulated that true copies of the original findings offered as exhibits were to be made by the court reporter and substituted as deemed necessary. Plaintiffs rested their case and the defendants offered no evidences. The matter was argued and the Court ordered that briefs be submitted. The case was taken under advisement. Court adjourned until Wednesday, January 29, 1947.

July 2, 1947, the Trial Judge made and filed findings of fact, conclusions of law and decree. After some preliminary recitals, the Judgment of the Probate Court of October 16, 1946, was set out in full and it was stated that the same came on for hearing January 24, 1947; that witnesses were called, sworn and examined, documentary evidence having been adduced, heard and considered, and the cause having been fully submitted to the Court and briefs of counsel having been filed and considered, and the Court being fully advised in the premises now makes its findings of fact and conclusions of law as follows, to wit:

(1) That the appeals from the judgment of the Probate Court were regularly taken, perfected and filed in this court within the time provided by law and the court specifically finds it has jurisdiction on said appeals; (2) that the plaintiffs and respondents, Irene Zeb Forwood and Virginia Zeb Ferrell, are the daughters and only children of Joe Zeb, deceased, and that they have never suffered any legal disability, nor have they ever been adjudged incompetent or insane, nor any one appointed guardian of their persons or estate; (3) that Joe Zeb died October 31, 1942, leaving his Last Will and Testament dated April 7, 1941, which was heretofore admitted to probate and is still in the process of administration in said Probate Court, a copy of which is attached to the amended answer to the amended petition on file herein and marked Exhibit "A", paragraph (V) of said will of the decedent is in words and figures as follows, to wit: (same being set out in full) (4) that the wife named in paragraph V, survives as the widow of such decedent and is the executrix of his will and estate and as trustee she is to continue to operate the business referred to in paragraph V of the will; (5) that the allegations contained in paragraphs 1, 2 and 3 of petitioners amended petition for declaratory judgment construing will are found to be true; (6) that

all employees, whether old or new, are adult, or nearly so, and there is not now nor has there ever been, any children under the age of ten years in the corporation, the nature of its business being such that it cannot use children under the age of ten years as employees; (7) that the nature of the trust contained in Paragraph V of the will of the decedent is such that the power of alienation of the property in the trust will not and cannot be suspended for a period longer than the continuance of the lives in being, as of the date of the death of the decedent; (8) that the beneficiaries specified in Paragraph V of the will are designated and defined with certainty; (9) that the duration of the trust as declared in Paragraph V of the will is definite and certain within the contemplation of law; (10) that paragraphs VII and VIII of the will of the decedent are in words and figures as follows, to wit:

"VII. Residuary Provision: Any other property owned by me and not covered by the foregoing provisions, I bequeath and devise to my wife Valeria Zeb. My property taken by her under this paragraph and under paragraph IV of this will shall be hers absolutely and in fee simple, free of any trust provision.

"VIII. Scope: This will shall apply to and dispose of every item or property owned by me at the last moment of my life, wheresoever the same be situated and of every kind and character.

Based upon the foregoing facts the court made and entered its conclusions of law, to wit:

(1) That paragraph V of the will of the decedent is valid and not void for uncertainty of beneficiaries, nor for uncertainty of duration, nor does any provision thereof violate the Idaho Statutes forbidding the suspension of alienation referred to by Section 54-111, I.C.A.; (2) That regardless of the provisions of Paragraph V of the will, petitioners and respondents are barred from any relief, as to the shares referred to in said paragraph V, would, if not controlled by said paragraph, be controlled by paragraphs VII and VIII of said will, and the provisions of said paragraph VII of the will would, in any event, vest title of the stock in Valeria Zeb, as the sole and only residuary heir and legatee under the will of the decedent; (3) that the judgment of the Probate Court of Latah County, Idaho, dated October 16, 1946, and heretofore referred to and from which the respective appeals were prosecuted, should, by Decree of this Court, to be made and entered herein, be reversed and a Decree entered herein ordering and directing the Probate Court of Latah County Idaho, to forthwith dismiss, with prejudice, the amended petition for declaratory judgment construing will, denying the petitioners any relief whatsoever thereunder and enter its judgment in accordance with the provisions, decreeing the

will of the decedent valid and lawful in each and every particular and ordering the executrix to proceed with the administration of the estate in accordance with the terms of the provisions of said will.

The findings of fact and conclusions of law having been entered and filed herein and based thereon, the Court rendered and entered its judgment and decree; wherein it is considered, ordered, adjudged and decreed; (1) that the nature of the trust declared in Paragraph V of the will of the decedent is such that the power of alienation of the property impressed therewith, will not and cannot be suspended for a period longer than the continuance of lives in being as of the date of the death of the decedent; (2) that the beneficiaries specified in paragraph V of the will are designated and defined with certainty; (3) that the duration of the trust as declared in paragraph V of the will, is definite and certain and within the contemplation of law; (4) that paragraph V of the will of the decedent, is valid and not void for uncertainty for beneficiaries, nor for uncertainty of duration, nor does any provision thereof violate the Idaho Statutes forbidding the suspension of alienation herein referred to by Section 54-111, I.C.A.; (5) that regardless of the provisions of Paragraph V of the will, the petitioners and respondents are barred from any relief, as the shares of stock referred to in said paragraph V would, if not controlled by said paragraph V, be controlled by said paragraphs 7 and 8 of the will, and the provisions of paragraph 7 would, in any event, vest title to the said stock in Valeria Zeb, widow of the decedent, as the sole and only residuary legatee under the will; (6) that the will of Joe Zeb, dated April 7, 1941, now in process of administration, in the Probate Court of Latah County, Idaho, is valid and lawful in all particulars thereof and should be enforced in accordance with its terms; (7) that the demurrer of the appellants to the amended petitions of respondents should be and the same is hereby sustained as to the fourth ground thereof, in that no facts here alleged in either of the first, second or third provisions or causes of action are sufficient to constitute a cause or causes of action. The respondents' demurrer to the amended petition is hereby overruled. Insofar as previous rulings are inconsistent with the provisions of the decree they are hereby reversed; (8) that the judgment of the Probate Court of Latah County, Idaho, of October 16, 1946, be and the same is hereby reversed and said Court is ordered and directed to forthwith dismiss with prejudice the amended petition for declaratory judgment construing will and deny the petitioners any relief thereunder and enter its judgment in accordance with the provisions of this decree, decreeing the will to be valid and lawful in each and every particular and ordering the executrix to proceed with the administration of the estate according to the terms of said will and

awarding the appellants their costs and disbursements in accordance with the provisions of this proceeding. Said decree is dated and filed July 2, 1947.

Section 54-111, I.C.A. is as follows: "The absolute power of alienation can not be suspended by any limitation or condition whatever, for a longer period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, except in the single case of contingent remainder in fee authorized in section 54-202." Said section is identical with, and was taken from Section 715 Cal.Civ.Code, prior to amendment, the same having been amended May 18, 1917.

Appellants seem to rely upon the case of In re Walkerly's Estate, 108 Cal. 627, 41 P. 772 (49 Am.St.Rep. 97), and have quoted said case in its entirety, after supplying headnotes, beginning with page 775. We think the nature of the trust in the Walkerly case and that of the instant case are very dissimilar. In the Walkerly case the trust was to continue for a period of 25 years after the date of the death of the testator and that no final sale or distribution of the trust estate was to be made during the lifetime of the testator's wife. His special purpose was to preserve this property unaliened and inalienable for at least 25 years, or for a longer period if his wife should live longer, but if she should die sooner, still for 25 years. Included within said trust was real and personal property. His trustees were directed

"(1) To take the possession, charge, and management of the property, and collect the rents, issues and profits thereof. (2) Out of the income or rents and profits to pay quarter-yearly the annuity or allowance hereinbefore made to my wife, Blanche M. Walkerly, for her support and maintenance. (3) To pay to my sister, Mary Windley, the sum of five hundred dollars per annum, during her life, payable semiannually. Should my sister die before her husband, then, and in such case, the annuity left shall not cease and determine, but shall go on, and shall be paid to Stephen Windley during his lifetime. (4) To annually distribute the residue of the rents and profits of the trust estate, after deducting the sum of $2,400 to be paid to my wife, and the sum of $500 to be paid to my sister, Mary, or her husband, and the taxes, insurance, and expenses, and charges of administration, equally among my nephews and nieces. Upon the death of any nephew or niece, his or her share shall go and be divided equally between his or her children, share and share alike. (5) To sell and convey all the trust property and estate at the expiration of twenty-five years from the date of my death * * *"

Thereafter, on September 7, 1887, the testator having been informed by his wife that she was pregnant with a child, by him, made and published a codicil to his last will and testament in order that he might make provision for such child and therein

revoke the gifts, bequests and devises made in his will for the benefit of his wife and bequeathed to her the sum of $100,000 to be paid to her when the Walkerly Block should be sold. He gave, bequeathed and devised to said child the sum of $100,000 to be paid when the Walkerly Block shall be sold as provided in his will and in the meantime to be a lien, mortgage, and burthen on said Walkerly Block, bearing interest at the rate of five per cent per annum. The Walkerly Block comprised by far the greater portion in value of the testator's estate. It was devised to the trustees upon the trust indicated, namely, to manage the property, and apply the proceeds for the use of the persons designated, and at the expiration of 25 years, or, if the widow should at that time be alive, then upon her death, to sell the property and distribute the proceeds among the then living nephews and nieces and the "descendants or heirs" of those who might be dead. "The law has seen fit to insist that the measure of the period of suspension shall be lives in being, and it will not countenance the suspension for any fixed period or term of years for the sufficient reason that during the time of such limitation, however short, the person capable of conveying the absolute interest might die,— a possibility not to be endured."

From the foregoing it is readily made to appear that subsequent to the date of the death of Mr. Walkerly, numerous issue of the then living nephews and nieces and the descendants and heirs of those that might be dead, could come into existence and become lives in being who were not in existence or lives in being at the time of his death. Under such a state of affairs the provisions of Section 54-111, supra, would be operative. No such condition exists in the instant case.

Under Paragraph V. Trust Provision, it is said: "I direct that my wife as such trustee shall continue to operate the said business as a going concern, provided that it continues to be reasonably profitable as such, and the period of operation shall be for ten years following my decease. My wife as such trustee shall have and exercise all the powers which I might exercise if living and in possession of the same interest as exists at the time of my decease. * * * I also instruct my trustee to continue in service the same employees of the business who shall be in my service at the time when this will becomes effective, * * *. This provision shall not prevent my trustee from discharging them or any of them, however, if they make demands for unreasonable compensation or fail in their duties."

Under the trust provision Mrs. Valeria Zeb Gothmann was authorized to terminate the trust at any time it proved unprofitable. The employees, as beneficiaries, had no interest in the corpus of the estate, and it is comparatively easy to discern that any one employable within the ten year period of the trust must neces-

sarily be a person who was alive and in being at the time Joe Zeb died. Considerations of this nature, together with others that might be mentioned, clearly disclose the dissimilarity between this and the Walkerly case.

The discharge or death of any one or all of the employees would have no effect on the property held in trust. The most that could happen would be a discontinuance of the beneficiary's interest payable to such discharged or deceased employee.

In re Hendy's Estate, 118 Cal. 656, 657, 50 P. 753, is a case that sheds light on the provisions contained in Section 54-111, I.C.A. Hendy left a legacy to his niece Mrs. Josephine Green. By a codicil, which was admitted to probate as a part of the will, it provided as follows: " 'The bequest of five thousand dollars to my niece Mrs. Josephine Green is to be held in trust by my executors for her benefit and the interest is to be paid *hir* monthly, at *hear deth* the same to be continued to *hear* two children Harrold and Mildred Green until they are each twenty-five years of age, when the five thousand dollars shall be paid to them share and share alike.' "

The syllabus is as follows: "A bequest to G. to be held in trust by executors for her benefit, the interest thereon payable to her, and at her death the same to be continued to ,two certain minors, until they are each 25 years of age, when the sum is to be paid to them share and share alike, does not violate Civ.Code, § 715, prohibiting the suspension of the power of alienation beyond the existence of lives in being."

And in commenting on said matter the court observed: "As to the trust for the children, we need here go in its construction only so far as to see whether or not it violates the rule against perpetuities. That rule, enunciated in section 715 of the Civil Code, permits property to be held inalienable, provided that the power of alienation be not suspended beyond the existence of lives in being. Therefore the duration of designated lives must always be, and be made, the ultimate measure of duration. But it matters not what other measures be taken, so long as they cannot extend the period of suspension beyond, and are controlled by the duration of, designated lives. * * * Examining the trust to the children with these considerations in mind, it is clear that, while inartificially drawn, it does not unduly suspend the power of alienation. If Mrs. Green outlives her children, then the trust must cease upon her death. If she dies before her children, and they in turn both die before reaching the age of 25 years, then also the trust terminates for lack of beneficiaries. When both or either of them surviving reach the age of 25, the mother being dead, the trust also ceases. In no possible event, then, is the power of alienation suspended beyond the existence of lives in being, the lives of the beneficiaries under the two trusts." See also In re Steele's, 124 Cal. 533, 57 P. 564; also In re

580

Rawitzer's Estate, 175 Cal. 585, 166 P. 581 and also In re. Yates' Estate, 170 Cal. 254, 149 P. 555.

In the case of Toland v. Toland, 123 Cal. 140, 55 P. 681, it is said: "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained; [citation] and, of two modes of interpreting a will, that is to be preferred which will prevent intestacy."

In the case of Chatterton v. Luker, 66 Idaho 242, 158 P.2d 809, 817, this court adopted the rule announced in the case of Wieri v. Anaconda Copper Mining Company, 116 Mont. 524, 156 P.2d 838, 841, in which it was said: " 'On the review of a decision of the District Court the presumption is that the decree of that court is correct (citing cases), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it.' "

■ At the outset it was stated that the parties had agreed that the only question involved was whether or not the trust provision violated the terms of Section 54-111 suspending the absolute power of alienation for a longer period than during the period of lives of persons in being, at the creation of the limitation or condition. The trial court found and held in its decree that regardless of the provisions of Paragraph V of the will, the petitioners were barred from any relief as the shares referred to in said Paragraph V would, if not controlled by said Paragraph V, be controlled by Paragraphs 7 and 8 of said will, and, in any event, vest title to the shares of said stock in Valeria Zeb, the widow of the decedent as the sole and only residuary heir and legatee under the will of the decedent. We think no error could come about as a result of such holding and particularly in view of the fact that said court decreed that Paragraph V of the will was valid and not void for uncertainty of beneficiaries, nor uncertainty of duration, nor does the provision thereof violate the Idaho Statute forbidding the suspension of alienation referred to by Section 54-111 I.C.A.

Testimony was adduced from Mr. Melgard, touching the ages of certain employees, notably "hand-pickers" and "Roguers". He stated that he knew of no person or persons ten years of age or under as having been in the employ of the Moscow Idaho Seed Co., Inc. He likewise testified that the concern was engaged in interstate commerce. Finding No. 6, recites that all employees, whether old or new, are adults, or nearly so, and that there is not now, nor has there ever been, any children under ten years of age in the employ of the corporation, that the nature of its business is such that it cannot use children under ten years of age as employees.

The Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., contains the provisions governing child labor, and classifies the ages of child labor in accordance with

the nature of the employment in which they are engaged. It is incumbent upon the employer of child labor to obtain age certificates of such employees. Idaho has no state certification system. However, it would seem that the State Superintendent of Public Instruction may issue age certificates by mail, from the office of said State Superintendent, who acts as special agent for the Children's Bureau in that connection. Applications for certificates may be made, either at the office of county school superintendents; at city superintendents in independent school districts throughout the state of Idaho; or, at the office of special agent—State Superintendent of Public Instruction at the State House, Boise, Idaho.

Under the "Oppressive Child Labor" provision, c. 676, 3d Session, Fair Labor Standards Act of 1938, § 3(l), among other things, it is said: "The Chief of the Children's Bureau shall provide by regulation or by order that the employment of employees between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Chief of the Children's Bureau determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being."

Sec. 16(a) of said act provides, that any person who wilfully violates any of the provisions of Sec. 15, shall upon conviction thereof be subject to a fine of not more than $10,000 or to imprisonment for not more than six months, or both. It is likewise therein provided that no person shall be imprisoned under said sub-section, except for an offense committed after the conviction of such person for a prior offense thereunder. Sec. 12 is included in Sec. 15 as one of the prohibiting acts against which the aforementioned penalty may be enforced.

Sec. 12(a) provides that no producer, manufacturer or dealer shall ship or deliver for shipment in commerce, any goods produced in an establishment situated in the United States in or about which within 30 days prior to the removal of such goods therefrom, any oppressive child labor has been employed, and (b) the Chief of the Children's Bureau in the Department of Labor, or any of his authorized representatives, shall make all investigations and inspections under sec. 11(a) with respect to the employment of minors.

Unquestionably the provisions of the Fair Labor Standards Act prohibit the employment of child labor where by reason of age or hazards it comes within what is known as the "oppressive child labor", provision.

Under date of February 1942, the Children's Bureau, United States Department of Labor, issued Folder No. 28, in which it made certain inquiries and answered same, to wit:

"1. What is an age certificate?

"An age certificate is a statement of a minor's age issued by a responsible official, based on best available documentary evidence of age, and carrying the signature of the minor and issuing officer.

"2. What is its purpose?

"The purpose of an age certificate is to furnish an employer with reliable proof of the age of a minor employed in his establishment in order that he may protect himself against intentional violation of State and Federal child-labor laws.

"7. What arrangements have been made to make certificates available to employers under the Fair Labor Standards Act?

"Through cooperative agreements with State agencies employment and age certificates issue in 44 States, the District of Columbia, Hawaii, and Puerto Rico are accepted by the United States Children's Bureau as proof of age. In Idaho, Mississippi, South Carolina, and Texas the Children's Bureau issues Federal certificates of age."

For the foregoing reasons we deem it unnecessary to comment on other various assignments of error set out by appellants in their brief.

From the findings of fact, conclusions of law and the decree, we must conclude that the judgment and decree of the trial court should be affirmed.

Costs to respondents.

BUDGE, C. J., and GIVENS, J., and SUTTON, D. J., concur in an affirmance of the judgment.

HOLDEN, J., concurs.