270 P.2d 1054

**BLUE BELL CO., Inc.**

**v.**

**EMPLOYMENT SECURITY AGENCY.**

No. 8099.

Supreme Court of Idaho.

May 19, 1954.

Boyd R. Thomas and Edward W. Pike, Idaho Falls, for appellant.

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

PORTER Chief Justice.

Appellant, Blue Bell Company, Inc., at the time involved herein, was engaged in the general marketing and transportation of petroleum products with its principal place of business at Idaho Falls. In furtherance of its marketing operations, the Company owned service stations in Idaho, including a service station in Pocatello, known as the Frontier Service Station.

On or about January 1, 1949, appellant's predecessor in interest, a partnership, entered into an oral agreement with Alexander Kinghorn of Pocatello whereby Kinghorn was to operate the service station in Pocatello on a commission basis. Thereafter, appellant was incorporated and on June 1, 1949, took over the partnership business. The verbal agreement with Kinghorn for operation of the Pocatello station was continued. Kinghorn operated such service station from January 1, 1949, until August 19, 1951.

On November 20, 1952, a hearing was had before J. E. Smith, Chief of Contributions of the Employment Security Agency, on the issues of whether or not Alexander Kinghorn was an employee of appellant during the time in question, and, if so, is the Blue Bell Company, Inc., subject to the payment of contributions to the Employment Security Agency on wages paid to Kinghorn and other attendants who worked at the company station operated by Kinghorn.

The hearing was continued on March 2, 1953, at Idaho Falls, before W. Clyde Williams, Appeals Examiner, Employment Security Agency. On May 7, 1953, J. E. Smith, Chief of Contributions, Employment Security Agency, made and filed his findings of fact and conclusions of law and decision to the effect that the Blue Bell Company, Inc., and its predecessor were the employers of Alexander Kinghorn and the other individuals working in the Frontier Service Station at Pocatello, Idaho, from January 1, 1949, to August 19, 1951.

The Blue Bell Company, Inc., on May 19, 1953, duly appealed to the Industrial Accident Board from the decision rendered by J. E. Smith, Chief of Contributions of the Employment Security Agency. On September 3, 1953, the matter was heard at Pocatello by the Industrial Accident Board. On November 28, 1953, the Board made and filed its findings of fact, conclusions of law and order affirming the determination of the Chief of Contributions of the Employ-ment Security Agency that Alexander Kinghorn and the employees at the Frontier Service Station were employees of the Blue Bell Company, Inc. From such order, the Blue Bell Company, Inc., has appealed to this court.

Appellant, on page 13 of its brief states as follows:

"The issue in this case is simply whether or not the relationship between the appellant and Alexander Kinghorn was covered employment within the meaning of Section 72–1316, Idaho Code, which provides as follows:

" 'Covered employment.—(a) The term "covered employment" means an individual's entire service, including service in interstate commerce, performed by him for wages or under any contract of hire, written or oral, expressed or implied, except—

\* \* . \* \* \* \*

" '(11) (d) Services performed by an individual only as an employee shall be covered employment, but there shall not be included in said covered employment, nor shall such term employee include, (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules.' "

The first assignment of error challenges the sufficiency of the evidence to sustain

Finding of Fact No. IV made by the Industrial Accident Board. In addition to finding the facts hereinbefore mentioned, the Board made Finding of Fact No. IV, reading as follows:

"The verbal agreement consisted, among other matters, of the following: Mr. Kinghorn, hereinafter called the operator, must keep his station clean, including driveways and pumps, and if he failed to do so, his conduct would constitute grounds for termination from his position; if the operator failed to keep up his volume of business, that also would constitute grounds for termination; the operator could set his own price for the products sold, but if it was such that the volume of sales suffered or the operator did not show a profit, again such acts constituted grounds for termination. The Company controlled delivery of produce to the station at all times. The operator was obligated to follow all the general instructions sent to him by the Company through the Company's various employees.

"The Company paid for the lights necessary at the station, necessary water, and the painting of the station. The Company paid for the telephone used at the station. The operator was required to make daily reports of the gasoline sold to the Company, and the Company on the other hand determined the amount of produce that was to be delivered to the operator. The Company during the duration of the alleged agreement entered and constructed an addition to the station of a self-service operation. The operator had no choice or voice in the matter of adding the self-service operation, and if the operator had not agreed to the addition of the self-service operation, it could have been grounds for firing the said operator. During the years 1949, 1950 and 1951 the Company carried Kinghorn as an employee for the purpose of Employment Security, as well as Workman's Compensation, and during the whole of that time failed at any time to protest the said contribution which it was paying on Kinghorn as an employee.

"The operator was required to produce a profit for the Company, as well as a profit for himself. The operator was required to be open at the same time every morning. The operator was required to service a car with speed and was required to follow the procedures as set out in a manual furnished him by the Company. The operator had to live up to the Company's policies to maintain his job and be able to stay in his capacity as operator of said station.

"In some instances the Company set the rate of pay of individuals hired by the operator. In certain instances employees of the Company interviewed prospective employees.

"There is nothing shown in the record relating to the duration of the agreement. There is nothing definite as to the conditions which would constitute grounds for termination of the alleged agreement."

284

It appears to be the contention of appellant that the Board erred in finding that the operator was obligated to follow all the general instructions sent to him by the Company for the reason there was evidence to the contrary. An examination of the transcript shows that the evidence, though conflicting, amply supports this finding of the Industrial Accident Board. This court, on an appeal, is limited to a review of questions of law. Section 72–1368(i), I.C. If the evidence is substantial, although conflicting, in support of the findings of fact of the Industrial Accident Board, then this court is bound by such findings. In re Pacific Nat. Life Assur. Co., 70 Idaho 98, 212 P.2d 397; Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952.

The second assignment of error attacks the Board's Ruling of Law No. II. After quoting the present Section 72–1316 (d) [hereinbefore set out] the Board made such ruling as follows:

"That under the above quoted law in order to sustain its claim, appellant has the burden of showing to the satisfaction of the Board that the operator has been and will continue to be free from control or direction by the Company over the performance of his duties and services, both under the oral agreement and in fact."

Appellant points out that the language used in this ruling is taken from Section 72–1316(d), I.C., as it existed prior to the amendment of such statute in 1949. The statute then was as follows:

"Services performed by an individual shall be deemed to be covered employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that such individual has been and will continue to be free from control and direction in connection with the performance of such services, both under his contract for the performance of such services and in fact."

The Industrial Accident Board was in error in this ruling of law as, under the present statute, the question of whether or not the employer-employee relationship exists is to be determined under the usual common-law rules. Party Cab Co. v. United States of America, 172 F.2d 87, 10 A.L.R.2d 358, certiorari denied 338 U.S. 818, 70 S.Ct. 62, 94 L.Ed. 496.

The Board's Ruling of Law No. III was as follows:

"That such control does exist where, as herein, the Company has the *right to control*, whether or not there is direction or control in fact. In this instance the record shows that actual control was exercised in many instances."

Appellant contests this ruling on the ground that there is no substantial evidence to sustain the same and the evidence conclusively shows that the Company did not have the right to control the operator and did not exercise actual control in any instance. This ruling partakes somewhat of the nature of a finding of fact. It

is amply supported by the evidence. There is no merit in appellant's claim of error in this respect.

Appellant challenges the whole of Ruling of Law No. IV, which ruling reads as follows:

"That the company has failed to meet its burden and for this reason, as well as for the reason that the facts herein above referred to show a right to control in the Company as to the services and duties of the operator, the Company is a covered employer under the aforementioned section of the Employment Security Law and is, therefore, liable for contributions as set out in the applicable sections of the Employment Security Law."

This ruling is subject to the same criticism as was applicable to Ruling No. II. In all other respects, the ruling is amply sustained.

Ruling of Law No. V is as follows:

"That supplementary to the right of control, the facts infer that the relationship between the parties could have been terminated without liability by either party, and this fact also gives right to inference that the operator is an employee and not a lessee."

The contention of appellant that the Board erred in making Ruling of Law No. V is without merit. The evidence shows that the relationship could have been terminated without liability by either party; and this fact is one of the approved tests in determining whether or not the relationship of employer and employee exists. In Ohm v. J. R. Simplot Co., 70 Idaho 318, at page 321, 216 P.2d 952, at page 954, in discussing the test to be used for determination of whether the relationship of employer and employee exists, we quoted with approval from Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020, 1022, as follows:

"The general test is the right to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, * * *."
See, also, In re Pacific Nat. Life Assur. Co., supra; Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884.

The Board found herein that appellant had the authoritative right to control the services and duties of the operator and that actual control was exercised in many instances. The Board further found that the relationship could have been terminated without liability by either party. These findings are sufficient under the common-law rules to support the order of the Board to the effect that Kinghorn and the other station attendants were employees of appellant; and that appellant is liable for contributions on the wages paid to them.

The erroneous rulings of the Board contained in Rulings No. II and IV are not necessary to sustain the Board's decision. They are not in conflict with the other rul-

ings of law or with the decision. Being unnecessary and not conflicting, they may be treated as surplusage and do not require a reversal of the order of the Board. Howell v. Khan, 42 Idaho 277, 245 P. 86; Breding v. Board of County Com'rs, 55 Idaho 480, 44 P.2d 290; Roddy v. State, 65 Idaho 137, 139 P.2d 1005; In re Zeb's Estate, 67 Idaho 567, 189 P.2d 95; Bolen v. Baker, 69 Idaho 93, 203 P.2d 376; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589.

The order of the Industrial Accident Board is affirmed. Costs to respondent.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.