(No. 23269.— )

JOHN EDMONDS *et al.* Appellees, *vs.* W. D. GOURLEY *et al.* Appellants.

*Opinion filed December 19, 1935.*

H. A. Evans, for appellants.

Fred Smith, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

The complainants, (appellees,) John Edmonds and Fannie Edmonds, filed in the circuit court of Massac county an amended bill of complaint for the specific performance of a contract alleged to have been entered into by them on March 12, 1928, with the defendants, W. D. Gourley and Ona J. Gourley, his wife, (appellants,) for the trade and conveyance, each to the other, of real estate hereinafter described. An answer was filed and evidence heard. The circuit court found that the evidence sustained the amended bill and decreed specific performance of the contract. The defendants by this appeal seek to reverse that decree.

The amended bill in substance alleged that the complainants were seized and possessed, in fee simple, of real estate described as "all of the west one-half of the northwest quarter, being eighty acres, in township 15, section 18, range 6 east, less one acre in the northwest corner, all situate in the county of Massac, and State of Illinois," and that the defendants were seized and possessed, in fee simple, of real estate described as "lots numbered 13, 14, 15 and 16 in block numbered six in the Mattie Johnson addition to the city of Brookport, Illinois, and lots 16 and 17 in block numbered three, original plat of the city of Brook-

port, Illinois, all situate in the city of Brookport, Massac county, Illinois;" that on March 12, 1928, the defendants agreed to execute and deliver to the complainants a good and sufficient warranty deed to the above described lots and pay the complainants the sum of $1500 in consideration that the complainants would make and deliver to the defendants a good and sufficient warranty deed to the farm property above described, except the one acre mentioned; that, pursuant to the agreement, on the same day the complainants made and executed a warranty deed to the farm to the defendants, and about the same time the defendants made and executed a warranty deed to the lots in question to the complainants, and that each property was encumbered. The amended bill alleged that the complainants and the defendants agreed to place both deeds in the hands of H. W. Holifield and on that date delivered the deeds to him; that the complainants and the defendants, respectively, agreed to clear the farm and the lots of encumbrances, and when they were so cleared they would then cause Holifield to deliver the deeds to the respective grantees in each deed named; that pursuant to the agreement the defendants took possession of the farm and the complainants took possession of the lots; that afterward, on March 17, 1928, the defendants made and executed a warranty deed to the farm to William Lynn and his wife and caused the same to be recorded; that the complainants cleared the farm of all encumbrances and complied with the agreements on their part, and notified the defendants that the deed to the farm was still in the possession of Holifield, ready to be delivered, and that Holifield had been instructed to deliver the deed upon the defendants' compliance with their agreement, and that the complainants were ready, willing and able and offered to perform all agreements on their part, and that they had repeatedly applied to the defendants and to Holifield for the deed and gave the defendants written notice that all the conditions

on the part of the complainants had been fully complied with and requested Holifield to deliver the deeds to them, but the defendants refused to deliver the deed to the complainants or cause it to be delivered to them. The prayer of the bill was for specific performance, and that the defendants be required to deliver to the complainants a deed to the lots described, the complainants being ready and willing and offering to perform the agreement on their part.

The answer of the defendants was, for the most part, a denial of the allegations of the bill. It averred that Ona J. Gourley was the sole owner of the lots in question. It admitted the agreement of the complainant Edmonds to clear the farm of all encumbrances, and admitted that the defendant Gourley had stated that he would clear the town lots of all encumbrances thereon. It admitted that the defendants executed a deed to the farm to William Lynn and Bertha Lynn, but denied that the deed conveyed the fee simple title to the lands and that the deed was recorded. The Statute of Frauds was pleaded as a defense. The answer further averred that the complainants, on and subsequent to March 12, 1928, made, executed and delivered their good and sufficient warranty deed to the farm, and thereby conveyed all their interest, rights and title in and to the farm to William Lynn for a good and valuable consideration to the complainants, and that because of the deed having been made by the complainants and delivered to Lynn, the complainants are not, and cannot be, able, ready and willing to carry out their alleged agreement for the exchange of the deeds, and that the complaint should be dismissed at the costs of the plaintiff.

The evidence for the complainants is, that on March 12, 1928, the defendant W. D. Gourley, and the complainants, John Edmonds and his wife, delivered their respective deeds to H. W. Holifield, president of the Brookport National Bank, each agreeing with the other to clear their respective properties of encumbrances within three or four

days, and that the deeds were then to be delivered by the depositary to each grantee. The defendants were to pay the complainants $1500 difference on their trade. Each of the deeds warranted title. The one from the complainants to the defendant Gourley recited that it was for a consideration of $4000 and conveyed the farm above described, "being eighty acres, less one acre out of the northwest corner which was sold to Elmer Tanner." Homestead rights were released and the grantors were to pay the taxes for 1927, due in 1928. The deed was acknowledged before Holifield. The deed from the defendants to the complainant Edmonds conveyed the lots in consideration of $4000, and homestead rights were released, and the grantors were to pay the taxes for 1927, due in 1928. Each deed was offered in evidence. The depositary was notified by Gourley that he had cleared his title; that he had paid the difference between $750 and a judgment which was a lien, but claimed that the title to the complainants' property had not been cleared. (Seven hundred and fifty dollars previously had been paid.) The deeds were to remain with the depositary until all liens were cleared from the respective properties and the parties agreed that delivery of the deeds should be made. The deeds remained in the depositary's possession since 1928 and were never delivered. The complainant Edmonds talked to the depositary several times about the delivery of the deeds and had once served him with a written notice requesting their delivery. Gourley never requested the delivery of the deed which he was to receive. The complainants and defendants each took possession of the respective properties, and Gourley thereafter sold the farm conveyed to him "or it went to William Lynn." Because neither Edmonds nor Gourley was satisfied that the other had complied with the agreement was the reason given by the depositary for retaining the deeds.

When Gourley took possession of the farm he agreed to give Edmonds immediate possession of the lots, on one

of which was a house, or if he failed to do so would pay the former $60 for his trouble. One room of the house had been padlocked by a governmental order and Edmonds did not obtain possession of it until a year after the trade was made, and he had never been paid anything on account of the defendants' failure to give him immediate possession. All taxes during the time the complainants have been in possession of the lots have been paid by them. When the judgment for $313.65 which had been rendered against the complainant Edmonds was deducted by Gourley from the $1500, the complainant's title was, as they contend, thereby cleared. The complainants conveyed by quit-claim deed to William Lynn all their interest in the farm property after the conveyance of the same farm by the defendants to Lynn and his wife. The reason given for the conveyance was to correct an error in the previous deed from the defendants to Lynn and his wife with respect to one-half acre. The receipts showing payment by the complainants of the taxes on the lots in 1929, and thereafter to and including 1934, were offered in evidence. It was admitted that Ona J. Gourley was not present the day the agreement was made with the defendant W. D. Gourley.

It was testified by two witnesses that Gourley admitted that Edmonds did not owe him anything, and that he, Gourley, would deliver a deed to Edmonds if the latter would share a part of the costs which Gourley had theretofore paid on account of their litigation; that Gourley stated that he was holding the deed for Edmonds' benefit and had suggested making a deed to Edmonds' daughter to protect Edmonds, but the latter did not agree to pay the costs requested by Gourley.

On behalf of the defense a warranty deed from the defendants to William and Bertha Lynn, dated March 17, 1928, acknowledged, and shown to have been recorded on April 9, 1929, was introduced in evidence. It recited that it conveyed "eighty acres more or less, and less the amount

sold by John Edmonds and Fannie Edmonds to Elmer Tanner, which is one acre."

One witness testified that he was acquainted with the complainant Edmonds and with William Lynn and was familiar with the eighty-acre farm, and his estimate of its value in 1929 was $3500; that in 1927 Lynn had offered to pay $5000 for the farm, but the offer was refused, and that nothing since that time had occurred to diminish its value except the rendition of a judgment against it. His estimate of the value of the building, which was of brick construction, on one of the lots described, was about $3000, and the adjoining lot was worth about $300. There was a small frame room east of the brick building which had remained locked and the term for which it was closed had not expired. The witness testified that the encumbrance had not been removed at that time; that the trade was made with the encumbrance thereon, the witness apparently meaning the inability to have possession of the frame room until the end of the term for which it was to remain closed. The defendants did not testify.

The chancellor, in holding that the complainants were entitled to specific performance, directed the delivery of a deed from the defendants to the complainants, then in the possession of Holifield, and in default thereof that the master in chancery execute and deliver a deed conveying title to the lands described in the deed previously prepared, ordering the defendants to accept the deed to the farm, and that the defendants pay the costs of the suit.

The errors assigned and contentions based thereon may be stated, in substance, as follows: (1) That the deeds executed by the respective parties were not unconditionally deposited in escrow; (2) that the alleged agreement was not in writing and was therefore within the Statute of Frauds; and (3) that the complainants were not in position to perform the contract on their part and are therefore not entitled to specific performance.

The evidence shows that the oral terms of the agreement involved the payment of $1500 by the defendants to the complainants and the clearing of liens on both properties; that by the retention of $313.65 from the above amount the defendant Gourley received the amount due him in the clearing of a judgment which was a lien against the farm. The conveyance, in which Gourley and his wife joined, to Lynn and his wife before the defendants had received their deed was an acknowledgment in writing and a confirmation of the oral agreement's full execution. If this were not so the conveyance was without any reasonable basis. The defendants' counsel argue that the conveyance to Lynn and his wife was merely one of possession, which Gourley made "to save himself partially." The deed was signed by Gourley and his wife, warranted the title and released the homestead rights of the grantors. It did not merely purport to vest the third party with possession. The complainants' conveyance to Lynn, according to the testimony on their behalf, was to make a correction in what the complainants thought was an incorrect deed by the defendants to Lynn and his wife. While there is some ambiguity in the record on the question, the deed may be assumed to have been made at the instigation of Gourley or Lynn, or both. There is no denial that the complainant Edmonds had discussions with respect to correcting the deed previously given. An inspection of the deed executed by the defendants to the Lynns, however, does not disclose any such error as Edmonds thought existed.

It would be inequitable for the defendants to execute and deliver a deed to a third person, purporting to convey and warrant the title, before they received a deed thereto, and by reason thereof successfully defend against a bill for the specific performance of the contract because they nor the complainants were in a position to perform the contract. Whether the attempted delivery of the deed in escrow was technically one in escrow because it was de-

pendent upon the parties' further agreement is not material if there has been a substantial compliance with the terms of the agreement. Even if the depositary was not a party to the agreement and is not a party to this suit, the deeds were executed with the intention of having them delivered when the conditions of the agreement were performed. The testimony of two witnesses that Gourley told Edmonds that the latter did not owe Gourley anything but that Gourley wished Edmonds to share the costs which the former had paid was undenied. Neither Gourley nor his wife testified. There is nothing in the record to show that Edmonds owes Gourley any specific amounts, either on account of the costs which Gourley incurred or because of unreleased liens on the farm. The depositary, who testified on behalf of the complainants, stated that the reason the deeds were not originally delivered by him was because the parties were involved in a lawsuit and were not then satisfied that the liens had been cleared, but the evidence at the time of the hearing was that the complainants were demanding the delivery of their deed because they had complied with the agreement and there was no showing that anything further remained to be done by them. There was no denial that the complainants had performed the conditions of the agreement on their part to be performed. The complainant Edmonds testified that he had sustained expense of about $60 on account of the failure of the defendants to deliver immediate possession of a part of the building on one of the lots, that one room was closed for a year, and that he sustained that expense is not denied. In addition to this expenditure the complainants have paid all the taxes on the lots since they took possession. After the lapse of several years since the original agreement was executed, the surrender of the possession of the farm by the complainants, the payment of the amounts due the defendants, and the complainants' unsuccessful attempts to obtain delivery of the deeds, the chancellor was justified, in

this equitable proceeding, in ordering specific performance of the contract.

The contract was not within the Statute of Frauds. While the deed left with the depositary, containing the names of both the defendants, was not in itself a sufficient memorandum or note of a contract to take the case out of the statute, when the defendants treated the conveyance as made by the complainants, and they in turn conveyed to the Lynns, their action in that regard could have been only in pursuance of the agreement and was a written confirmation of it. A court of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud. (*Gladville* v. *McDole*, 247 Ill. 34.) A contract must be mutual before it can be enforced, but when both parties have acted upon it and taken the benefits of it, it is mutual. No inflexible rule can be laid down to control the specific performance of contracts in equity. Every case must necessarily depend upon its specific facts. (*Zempel* v. *Hughes*, 235 Ill. 424; *Godwin* v. *Springer*, 233 id. 229.) Specific performance, however, will not be denied where there is a fair and valid contract and the party seeking performance has performed or offered to perform all of the terms and conditions required of him. *Greengard* v. *Bernstein*, 343 Ill. 416; *Fagan* v. *Rootberg*, 320 id. 586; *Ullsperger* v. *Meyer*, 217 id. 262.

While the depositary of the deeds, Holifield, is not a party to this suit the decree of the circuit court can nevertheless be carried out. If the depositary refuses to deliver the deed now in his possession to the complainants the chancellor has directed that the master in chancery execute and deliver such a deed to the complainants. The decree of the circuit court is therefore affirmed.

*Decree affirmed.*