**173 P.2d 74**

### NOLAN v. GRIM.
No. 7303.
Supreme Court of Idaho.
Sept. 25, 1946.

Ray E. Durham, of Lewiston, for respondent.

J. H. Felton, of Moscow, for appellant.

MILLER, Justice.

November 18, 1941, the respondent, acting for herself and as attorney-in-fact for two sisters, Maud C. Barnett and Julia E. Johnson, joint tenants, and the appellant, W. F. Nolan, entered into an agreement, a copy of which is attached to the amended complaint as Exhibit "A", for the leasing of what is commonly known as the "Frank Leonard place" or "Frank Leonard farm," and consisting of approximately 480 acres

of agricultural land in Latah County, Idaho. The lease continued until October 1, 1945. Included therein was an option or provision to the effect that it was made subject to the sale of the premises, and that the lessee should have the first refusal for a period of 30 days in which to arrange for and purchase the premises on the same terms and conditions as any former applicant in the event the lessors received a bona fide acceptable offer therefor.

On or about August 15, 1944, the respondent and her husband, George Grim, called on appellant at the aforementioned premises, when a conversation was had relative to the sale and purchase of said farm. The testimony of Mr. Nolan shows that when Mrs. Grim got ready to leave she said, "Mr. Nolan, I would like to sell you this farm," and Mr. Nolan said, "I am not in position to buy it at the present time. However, I might talk business with you in a couple of weeks." Mr. Nolan asked what Mrs. Grim wanted for the farm and she said, "Thirty-five thousand dollars." Mr. Nolan told her that he did not know whether he could handle it or not, but that he would know more about it in a couple of weeks when the harvesting was completed and the crops sold.

On or about September 14, 1944, it appears a further conversation was had, at which time Mr. Nolan called on Mrs. Grim at Clarkston, Washington, and in which said conversation Mr. Nolan advised Mrs. Grim, "I am down to buy your farm, if you want to sell it now—" and Mrs. Grim asked, "What kind of terms?" Mr. Nolan said, "Twelve thousand dollars down" and that he could handle the other through a mortgage or any way she wanted, but that he would give her $35,000 for the farm. Thereafter they went to the office of Mr. Shoemaker, wherein it appears that some discussion was had with respect to a contract of sale, that Mr. Shoemaker advised that such was not necessary. They then went into the bank and the Cashier, a Mr. McCarthy, prepared a purported agreement, which is appellant's Exhibit "C", and which is the basis for the action in District Court for specific performance, and of the appeal to this Court, and which is as follows:

"EXHIBIT 'C'

September 14, 1944

State Bank of Clarkston

Clarkston, Washington

Gentlemen:

I hand you herewith my check for $1,000.00 as a down payment on the Frank Leonard place situated in Latah County, Idaho, to be sold to me for the sum of $35,000.00 upon the execution of a deed conveying the place to me and the delivering of a mortgage to the sellers of $23,000.-00.

It is hereby understood that the sellers shall have a reasonable amount of time to secure for me a Warranty Deed and to complete this deal.

(W. F. Nolan)

I hereby agree to sell the Frank Leonard farm situated in Latah County, Idaho, to Mr. W. F. Nolan for the price of $35,000.-00.

(Mrs. Anna Marie Grim)"

Mr. McCarthy, the Cashier of the State Bank of Clarkston and who prepared the aforementioned Exhibit "C", was called as a witness and identified the check mentioned in Exhibit "C", as follows:

"Q. Did you receive any written or oral instructions in regard to that check at the time it was delivered to you on September 14, 1944? A. I don't remember.

"Q. Do you have any notations in your books with reference to what you were to do with it? A. No, I haven't any other notations."

About the 1st of October, after the foregoing transactions, Mr. Nolan testified that Mrs. Grim wrote a letter to him stating

"EXHIBIT 'D'

Farmington, Wash.        September 15 1945        No.–
98–456            FARMINGTON STATE BANK        98–456
Pay To The Order of        Anna Marie Grim        $1000.00
One Thousand and no/100 Dollars

For payment on farm

W. F. Nolan"

(A notation in brief of appellant, page 7, says: "This check is dated September 14, 1944, although some of the pleadings erroneously show the date as September 15, 1945.") Said check never was delivered to the payee or any one for her. Mr. McCarthy was asked,

"Q. What became of that check at that time, was it turned over to you? A. Yes, it was.

"Q. Have you had possession of it at all times since then until it was introduced in evidence? A. I have.

"Q. It has never been out of your possession or the bank's? A. It hasn't been out of our possession.

that she did not want to sell the farm for less than $40,000, but if he was willing to give $40,000 he could have the place.

There is no place in the record in which it is stated whether or not the $23,000 mortgage was a purchase price mortgage or whether it was or would be secured by properties other than those included in the lease, nor is there any proof from any source as to what the rate of interest would be, whether payable in installments or in a lump sum, or as to the due dates of any installments or as to the maturity of said mortgage.

The case was tried before the Court, sitting without a jury, and on April 11,

1946, the Court made and filed its Findings of Fact, Conclusions of Law and Judgment.

A copy of Exhibit "C", dated September 14, 1944, addressed to the State Bank of Clarkston, is included in Paragraph VI of the Findings of Fact. Paragraph I of the Conclusions of Law is as follows: "That the said instrument described and set forth in the foregoing Findings of Fact under date of September 14, 1944, is so indefinite as to its terms that specific performance of said contract cannot be enforced."

The judgment and decree dismissed plaintiff's complaint and amended complaint and the cause of action. April 15, 1946, notice of appeal was filed and served.

■ 25 R.C.L. 218, Sec. 17, says: "One of the fundamental rules respecting the specific performance of contracts is that performance will not be decreed where the contract is not certain in its terms. The terms must be complete and free from doubt or ambiguity, and must make the precise act which is to be done clearly ascertainable. A decree of specific performance may be entered where the contract is certain and complete, or contains provisions which are capable in themselves of being reduced to certainty, and from which the intention of the parties can be clearly ascertained, but such a decree will be denied if some of the terms of the contract are indefinite and uncertain or are left open for future determination by the parties." (See vast array of authorities supporting the above text.)

In a long line of authorities, this jurisdiction has adhered to the rules announced in the foregoing text. Howes v. Barmon, 11 Idaho 64, 81 P. 48, 69 L.R.A. 568, 114 Ann.St.Rep. 255; Moody v. Crane, 34 Idaho 103, 199 P. 652; Armstrong v. Henderson, 16 Idaho 566, 102 P. 361; Childs v. Reed, 34 Idaho 450, 202 P. 685; Zaring v. Lavatta, 36 Idaho 459, 211 P. 557; Machold v. Farnan, 14 Idaho 258, 94 P. 170; Prairie Development Co. v. Leiberg, 15 Idaho 379, 98 P. 616; Wolf v. Eagleson, 29 Idaho 177, 157 P. 1122; Thompson v. Burns, 15 Idaho 572, 99 P. 111; Barker v. McKellar, 50 Idaho 226, 296 P. 196; Sherman v. Watson, 58 Idaho 451, 74 P.2d 181.

■ Counsel for appellant contends, page 17 of his brief, that when Mr. Shoemaker advised that "it was not necessary" that the parties "have a land contract of sale," that Mr. Shoemaker's "advice was correct," because of the provisions of the lease and that the lease is a sufficient writing, "and that no further writing is necessary to comply with the statute of frauds or to cause the contract to be enforceable." There is no merit in such contention. The provisions in the lease that the lessee shall have 30 days in which to arrange for the purchase of the premises on the same terms and conditions as may be agreed upon by and between any person and the lessors, are nothing more or less than an option in favor of lessee. No written agreement of sale and purchase between the lessors and any other person was ever made. Accord-

ingly, no valid terms and conditions ever existed or were or are ascertainable.

The trial court's findings of fact, conclusions of law and judgment and decree are amply supported by the record. The judgment of the trial court must be affirmed and it is so ordered.

Costs awarded in favor of respondent.

BUDGE, GIVENS and HOLDEN, JJ., concur.