203 P.2d 380

**LOCKLEAR v. TUCKER et al.**

No. 7428.

Supreme Court of Idaho.

Feb. 17, 1949.

Dunlap & Dunlap, of Caldwell, for respondents.

Dale Clemons, of Boise, and E. H. Casterlin, of Pocatello, for appellant.

PORTER, Justice.

By his complaint in this action the plaintiff alleges that the plaintiff and defendants, Dudley G. Tucker and Nona E. Tucker, entered into a written contract on December 11, 1946, reading as follows:

"Earnest Money Receipt and Option
"Dated December 11, 1946.

"Received of A. N. Locklear, of Boise, Idaho, hereinafter called Purchaser, the sum of Four Hundred Fifty and no/100 ($450.00) Dollars, as earnest money and in part payment for the purchase of the following described real estate situate in Canyon County, State of Idaho, to-wit:

"The East Half (E½) of the Southeast Quarter (SE¼), the South Half (S½) of the Northeast Quarter (NE¼), and all of the Northwest Quarter (NW¼) of the

Northeast Quarter (NE¼) lying South and West of the Right of Way of the Oregon Short Line Railroad Company, and all of the East Half (E½) of the Northwest Quarter (NW¼) lying South and West of the Right of Way of the Oregon Short Line Railroad Company, all in Section 23, Township 5 North, Range 5 West of the Boise Meridian, Canyon County, Idaho, excepting therefrom the Right of Way of the Oregon Short Line Railroad Company, as now located.

"which we, Dudley Tucker and Nona Tucker, husband and wife, have this day sold to the purchaser for the sum of Ten Thousand Four Hundred Fifty and no/100 ($10,-450.00) Dollars, on the following terms, to-wit:

"The sum of $450.00 as hereinabove receipted for, and the balance of $10,000.00 to be paid upon acceptance of title and delivery of Abstract of Title showing good and merchantable title in Dudley Tucker, "provided, however, that this sale is dependent upon the consummation of a loan of Eight Thousand and no/100 ($8,000.00) Dollars, to be obtained by purchaser, and should this loan for any reason fail to materialize or be turned down, then and in that event the purchaser shall have no obligation under this contract, and shall be entitled to the return of the sum of $450.00, which he has this day paid on the purchase price.

"A marketable Abstract of Title from a reliable abstract company is to be furnished the purchaser forthwith, and purchaser shall have 10 days within which to reject or accept the title as shown by the abstract.

"Seller agrees to pay all taxes and assessments of whatsoever kind or nature that may be due on said premises, and all interest on all encumbrances up to date at which legal possession shall be given, and also to convey by good and sufficient warranty deed, free and clear of all liens and encumbrances to date, except bonded indebtedness.

"For and in consideration of the sum of $1.00, and other valuable consideration, hereby acknowledged, seller hereby extends to purchaser the option to purchase that certain property situate in Canyon County, State of Idaho, located in Section 24, Township 5 North, Range 5 West of the Boise Meridian, bounded on the West by the North and South section line between said Section 24 and Section 23, bounded on the North and East by the railroad tracks, and bounded on the South by Cole Slough, consisting of approximately ninety-six acres, for the sum of $2,000.00. Sellers agree that they will give purchaser sixty days notice of their intention to sell the property, and at any time within said sixty days, purchaser may buy the same for the said sum of $2,000.00, by paying $500.00 then and the balance to be paid in three equal yearly installments of $500.00 each. The unpaid balance on the purchase price shall bear interest at the rate of Five Percent per annum, interest to be paid annually.

"Should purchasers fail to exercise their option within the sixty days as herein provided, sellers may then convey said property free and clear of this option.

"This option to purchase shall be dependent upon the consummation of the purchase of the property first described in this instrument, and should such sale for any reason not be consummated, then this option shall be of no force and effect. If purchaser exercises his option to purchase as herein provided, the sellers agree that they will place in escrow a deed to this property, conveying the same to the purchaser, together with a contract embodying the terms of this option, with some reliable escrow holder, said deed to be delivered upon the payment of the entire balance of the purchase price.

"Dudley G. Tucker
"Nona Tucker"

The contract was duly acknowledged by Dudley G. Tucker and Nona Tucker. Beneath the acknowledgment the contract reads:

"For valuable consideration, I hereby agree to the terms and conditions of the foregoing earnest money receipt and option.

"A. N. Locklear
"Purchaser"

The complaint further alleges, so far as material to this decision, that the provisions of the contract with reference to the purchase of the lands first described therein have been fully carried out and such lands conveyed to the plaintiff who is now in possession thereof. That on or about July 7, 1947, the defendants, Dudley G. Tucker and Nona E. Tucker, attempted to sell and convey the lands described in the option portion of said contract to the defendants, Sidney G. Tucker and Jessie E. Tucker; and for such purpose duly made and acknowledged a warranty deed so conveying such lands, which deed was duly placed of record on July 14, 1947. That the defendants, Dudley G. Tucker and Nona E. Tucker, failed, refused and neglected to give the plaintiff any notice of their intention to sell and convey said lands in violation of their covenant so to do contained in the option portion of the contract.

That on July 16, 1947, and within sixty days after the recording of said deed, the plaintiff exercised his option by tendering to the defendants, Dudley G. Tucker and Nona E. Tucker, the initial payment of $500 on the purchase price of the lands described in the option and requested said defendants to place a deed in escrow as required and provided in said option contract. That the said defendants refused said payment and do now refuse the same and refuse to perform their covenants in respect to the land described in the option. That the plaintiff now and at all times mentioned, has been ready, able and willing to pay the said sum of $500 as required to exercise his option and require performance.

That the defendants, Sidney G. Tucker and Jessie E. Tucker, attempted to pur-

chase and obtain title to the lands described in the option with full knowledge that the same had been optioned to the plaintiff and with full knowledge of all the facts alleged in connection therewith. The plaintiff prays that the deed to the defendants, Sidney G. Tucker and Jessie E. Tucker, be declared null and void; and for specific performance enforcing the contract with respect to the option provisions thereof.

The defendants, Dudley G. Tucker and Nona E. Tucker, filed a general and special demurrer to the complaint. Likewise, the defendants, Sidney G. Tucker and Jessie E. Tucker, filed a general and special demurrer. The demurrers were orally presented to the court and on December 19, 1947, the court made an order sustaining the general demurrers of the defendants and ordering the complaint dismissed. The record does not disclose any disposition of the special demurrers. Pursuant to such order and on the same day, judgment was entered that plaintiff take nothing by this action and that the defendants recover their costs. From such judgment the appellant prosecutes this appeal.

The appellant cites as error the making and entering of the order sustaining the general demurrers of respondents to appellant's complaint and the entering of judgment of dismissal. The order sustaining the general demurrers does not show upon what grounds the court held that the complaint did not state facts sufficient to constitute a cause of action; however, in their brief the respondents attack the sufficiency of the complaint upon several grounds which were apparently the ones urged upon the trial court.

The respondents first contend that where a party is seeking to enforce specific performance of a contract, he must plead and prove facts which affirmatively show that the contract is just and reasonable and based upon an adequate consideration; and that the complaint in question is insufficient in this respect. Respondents cite Herzog v. Atchison T. & S. F. R. Co. 153 Cal. 496, 95 P. 898, 17 L.R.A.,N.S., 428; Mayer v. Beondo, 83 Cal.App.2d 665, 189 P.2d 327, 190 P.2d 23; and Bear Track Min. Co. v. Clark, 6 Idaho 196, 54 P. 1007.

The California cases cited and other California decisions are in accord with the contention of respondents. However, such decisions are based upon the specific provisions of the California statutes. Montana, under statutes similar to those of California, has declined to follow the California decisions and takes the view that the issues of whether or not the contract is just and reasonable, or the defendant has received an adequate consideration, are matters of defense. Finlen v. Heinze et al., 28 Mont. 548, 73 P. 123; Linse v. Zastrow, 63 Mont. 241, 207 P. 119.

In the Idaho case of Bear Track Min. Co. v. Clark, supra, the court said that in a suit for specific performance the plaintiff should show, among other things, that the contract is fair and reasonable and

based upon an adequate consideration. However, an examination of the case discloses that the decision turned upon the fact that there was no consideration, adequate or otherwise, for the contract in question.

It appears that the matter has been determined adversely to the contention of respondents in the two later Idaho cases of Wolf v. Eagleson, 29 Idaho 177, 157 P. 1122, 1126 and Mochel v. Cleveland, 51 Idaho 468, 5 P.2d 549, 551. We quote from Wolf v. Eagleson, supra: "A number of California cases are cited by counsel to the effect that in an action for specific performance the complaint must allege affirmatively adequacy of consideration and the mutuality of the contract as a basis for a decree. These decisions appear to be based upon a provision of the California Civil Code (section 3391) which provides that specific performance cannot be enforced against a party to a contract if he has not received an adequate consideration therefor, and if it is not shown to be as to him fair and reasonable. We do not know of any provision of this sort in our Idaho statutes, or of any such formal rule of practice in this state. * * *"

In Mochel v. Cleveland, supra, our court said:

"Appellants attack practically all the findings for want of evidence, urge that the judgment and decree is contrary to law and that the court erred in overruling their motions for nonsuit and in the admission of certain evidence. First, they contend that their motions for nonsuit should have been sustained, for the reasons that respondents failed either to plead or prove that the consideration to be paid was adequate or fair, and that they could not proceed for specific performance and at the same time demand foreclosure of a vendor's lien. There is nothing in the first contention. The California cases to this effect cited by appellant, notably White v. Sage, 149 Cal. 613, 87 P. 193, are based upon section 3391, California Civil Code, providing that specific performance cannot be enforced against a party to a contract, 'if he has not received an adequate consideration for the contract' and 'if it is not, as to him, just and reasonable.' Manifestly, the burden of pleading and proving these essentials is cast upon a plaintiff in California; such was the old equity rule. But the modern rule now prevalent in a majority of jurisdictions holds that the duty of alleging, and the burden of proving, inadequacy of consideration rests on the party relying upon it as a defense. Supporting the latter rule is the state of South Dakota, notwithstanding its statute is identical with that of California. Sturtz v. Ommen, 32 S.D. 396, 143 N.W. 288. In Idaho, we have no such statute. C.S. § 5663, reads: 'A written instrument is presumptive evidence of consideration.'

"C.S. § 5664, reads: 'The burden of showing a want of consideration suffi-

cient to support an instrument lies with the party seeking to invalidate or avoid it.'

"Under such announcements, we cannot but hold that inadequacy of consideration is a matter of defense. * * *" C.S. sections 5663 and 5664 are now sections 28-103 and 28-104, I.C.A.

■ It is next contended by respondents that the option contract in question is too indefinite, uncertain and incomplete to sustain an action for specific performance. It is well recognized that specific performance will not be granted unless the contract is complete, definite and certain in all its material terms, or contains provisions which are capable in themselves of being reduced to certainty. Sherman v. Watson, 58 Idaho 451, 74 P.2d 181; Nolan v. Grim, 67 Idaho 138, 173 P.2d 74. Generally, uncertainty in a subsidiary part of an agreement whose main particulars are sufficiently certain, will not prevent a decree of specific performance. 49 Am.Jur. 40.

■ The option contract in question is definite and certain as to the parties; the description of the property; the purpose of the contract; the total price to be paid; time and amount of first payment; amount of installments; interest on the deferred payments; time for execution of deed; and time for delivery of deed.

The respondents complain that the option is indefinite and uncertain as not showing on what dates the deferred payments are to be made; where the contract and deed are to be placed in escrow; when the plaintiff is to obtain possession; who is to pay the taxes during the term of the proposed contract; whether a quitclaim or warranty deed is to be furnished; what the result would be of a default on the part of purchaser; and whether the payments made would be forfeited in case of default.

The provision that at the time the option is exercised the purchaser may buy the property by paying $500 *then*, and that the balance is to be paid in three equal *yearly* installments of $500 each, fixes the dates of the deferred payments. The provision that the sellers will place in escrow a deed to the property with some reliable escrow holder, is sufficiently definite and certain for a subsidiary part of the contract.

■ The law applicable thereto is an integral part of the contract; and in the absence of covenants to the contrary, determines who is entitled to possession of the property; who is to pay the taxes; the results which would follow a default; and the type of deed to be furnished where the agreement provides for a deed *conveying* the premises to the purchaser.

The option contract set out in the complaint of appellant thus appears to be sufficiently definite, certain and complete to sustain a decree of specific performance. See Morgan v. Firestone Tire & Rubber Co. et al., 68 Idaho 506, 201 P.2d 976.

Finally, the respondents contend that the common law rule against perpetuities is in force in this jurisdiction; that it was not abrogated by the enactment of section 54-111, I.C.A.; and that the option contract in question violates the rule against perpetuities. The common law rule against perpetuities is generally stated to be that no interest in real estate is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest plus the period of gestation.

Section 54-111, I.C.A. provides as follows: "Suspension of Power of Alienation —The absolute power of alienation can not be suspended by any limitation or condition whatever, for a longer period than during the continuance of the lives of the persons in being at the creation of the limitation or condition, except in the single case of contingent remainder in fee authorized in section 54-202."

There is a distinction between the rule against perpetuities and our statutory rule. The first is directed towards the prevention of the vesting of estates at remote periods of time, while the statute does not insist upon the vesting of estates but only upon their alienability. However, both rules deal with the same subject matter and have the same fundamental object; that is, to prevent the taking of property out of commerce for a period longer than that prescribed by the rule or the statute.

Respondents in support of their contention that the common law rule against perpetuities is still in force, rely upon section 70-116, I.C.A., Cox v. St. Anthony Bank & Trust Co., 41 Idaho 776, 242 P. 785, and Sprouse v. Magee, 46 Idaho 622, 269 P. 993. Said section 70-116 is as follows: "Common Law in Force.— The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state."

The two cases cited are only in point in so far as they adhere to the principle that changes in the common law by the adoption of a statute are not to be presumed, unless the intent appears to accomplish that purpose.

The question is one of first impression in this state. However, California with a similar statute, has dealt with the matter. In Strong v. Shatto, 45 Cal.App. 29, 187 P. 159, 161, the Court said: " * * * It is true that the common-law rules governing real estate titles prevail in this state, so far as not repugnant to or inconsistent with the Constitution or laws of this state. Pol. Code § 4468. But for the very purpose of avoiding the subtleties and technicalities of the common law as to real property there has been enacted into our Civil Code what appears to be intended as a complete scheme or system on the subject. Blakeman v. Miller, 136 Cal. 138, 68 P. 587.

**92**

89 Am.St.Rep. 120. It ought not, therefore, to be the policy of the courts to tack on any restrictions in the free control and disposal of real property by contract or conveyance not inconsistent with the provisions of the Code on that subject. Sections 715, 716 and 717 of the Civil Code state the limitations upon the power of suspension of alienation. There is no express statement of the rule against perpetuities."

It appears that New York originated a system governing alienation of real property; that such system has been largely adopted in a number of other states including California, Arizona, Michigan, Minnesota and Wisconsin; and that these states all hold that their statutory provisions on restraint of alienation abrogate the common law rule against perpetuities. In re Water Front on Upper New York Bay, 246 N.Y. 1, 157 N.E. 911; Windiate v. Lorman, 236 Mich. 531, 211 N.W. 62; Windiate v. Leland, 246 Mich. 659, 225 N.W. 620; Lowell v. Lowell, 29 Ariz. 138, 240 P. 280; 48 C.J. 1002, section 97, note 66.

After mentioning that the statutory system was originated in New York, 48 C.J. 1002 section 97 continues as follows:

"The New York system has since been copied or imitated, in part or in whole, in a number of other jurisdictions, * * *

"There has been in the decisions, some confusion of the statutes relating to suspensions of alienability or ownership with the common law rule against perpetuities, and in at least one jurisdiction such a statute has been said to be merely declaratory of that rule, and to require the vesting of future interests within the period prescribed; *but the proper view appears to be that the statutes substitute a new rule for the common law rule against perpetuities, which was in force prior to their adoption;* and accordingly the only question which now arises in jurisdictions where such statutes have been enacted is as to what limitations are forbidden by them." (Emphasis supplied.)

Respondents urge that the California rule is not applicable in Idaho because California has an additional statute on the subject. Our section 54-111, I.C.A. is similar to section 715, Civil Code of California. California has also section 716, in effect interpreting section 715. Appellant persuasively answers such contention on pages 21 and 22 of appellant's brief from which we quote:

"No doubt it will be argued that the California statutes go farther than our Section 54-111, I.C.A., by reason of Section 716 of the California Civil Code which provides, in substance, that the power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. The converse is equally the law, that if there are people in being who could give an absolute fee then the statute does not apply.

"But such must be the law in Idaho by necessary construction. To hold otherwise would prevent the making of any option, if options are within the meaning of the statute, with a definite time within which the option could be exercised, because that period could possibly be longer than the lives in being, which, of course, is prohibited."

By the enactment of Section 54-111 and cognate sections, the provisions of which are similar to those in the California Code, we are constrained to hold that Idaho has adopted what is intended to be a complete system governing alienation of real property; and that the common law rule against perpetuities is not in force in this jurisdiction.

Apparently the respondents make little contention that the option contract in this case violates the restraint upon alienation as set out in Section 54-111, I.C.A. See In re Water Front on Upper New York Bay, supra; In re Walkerly's Estate 108 Cal. 627, 41 P. 772, 49 Am.St. Rep. 97; In re Hendy's Estate, 118 Cal. 656, 50 P. 753; Weber v. Texas Co. 5 Cir., 83 F.2d 807; Windiate v. Leland, supra; In re Zeb's Estate, 67 Idaho 567, 189 P.2d 95.

From the foregoing it appears that it was error for the trial court to sustain the general demurrers interposed by the respondents to the complaint of the appellant, and to enter the judgment of dismissal. The judgment will be reversed and the cause remanded with directions to the trial court to vacate the judgment, overrule the general demurrers and to proceed further in the premises. Costs awarded to appellant.

HOLDEN, C. J., GIVENS, J., and GLENNON and BAKER, Dist. JJ., concur.