380 P.2d 893

B. W. McCANDLESS and Ima Mae McCandless, Plaintiffs-Respondents,

v.

Herman SCHICK and Vera V. Schick, Defendants-Appellants.

No. 9088.

Supreme Court of Idaho.

April 19, 1963.

Rayborn, Rayborn, Rayborn & Webb, Twin Falls, for appellants.

**512**

Hepworth & Nungester, Buhl, for respondents.

McFADDEN, Justice.

Respondents, B. W. McCandless and wife, as purchasers, instituted this action against appellant Schick and wife, as sellers, specifically to enforce an alleged agreement of sale of real property or in lieu thereof for damages.

In May, 1960, the Schicks listed with one Ralph Assendrup, a licensed real estate broker, their 61 acre farm property for sale at the price of $42,500.00. Assendrup contacted the McCandless's, who on June 14, 1960, made an offer to purchase the property for $34,000.00. This offer prepared by Assendrup was contained in a printed form of "Receipt and Agreement to Purchase",

with various blanks filled in. Respondents offered to purchase the described property for the sum of $34,000.00 payable as follows: $1,000.00 upon signing (which payment was made at the time the McCandlesses executed it); $4,000.00 at the date of closing; and, "Assume 1st Mortgage to John Hancock in the amount of ($12,000.-00) Twelve Thousand Dollars. Balance of Seventeen Thousand Dollars ($17,000) on Contract, payable at one-third (⅓) gross crop per year. Said payment due May 1st of each year, first payment due May 1, 1961. Purchaser has privilege of making accelerated payments." Before the offer was actually signed the following was added: "Said contract payments to include interest at the rate of 5½% per annum." By its terms the sellers had four days to approve the sale.

Assendrup submitted this offer to the Schicks who examined it and refused to accept the offer. A few days later, within the four day period, Assendrup again consulted the Schicks and discussed with them the result of his seeking better offers. The Schicks again refused to accept the offer as then submitted, but there was added to the back of the instrument setting out respondents' offer the following:

"Seller agrees to this sale. Providing: he the seller receives all of 1960 crops, and first payment on contract from Purchaser be changed to May 1st, 1962. Possession date to be December 1, 1960. Seller to pay all 1960 crop expenses and taxes."

In the presence of Assendrup, the Schicks then subscribed their names as sellers following the last addition. The same day Mr. and Mrs. McCandless likewise subscribed their names as purchasers and Assendrup acknowledged all signatures.

In July, 1960, the Schicks wrote Assendrup to the effect that they withdrew his authority for sale of the property, and they canceled the listing. In August they executed a three year Farm Lease with the brother of Mr. Schick, and in September this action was commenced.

Respondents moved the court for a preliminary injunction, which after hearing, was granted, giving the respondents possession of the property on March 1, 1961. By stipulation the evidence submitted at the hearing for preliminary injunction was with other evidence submitted and considered by the court on the hearing of the principal action. The trial court adopted the findings of fact and conclusions of law entered at the time of issuance of the preliminary injunction, and entered a decree for respondents, ordering appellants to specifically perform the contract and fixing the amount recoverable as damages. Appellants appealed from this decree.

**514**

By their specifications of error appellants challenge Findings of Fact Nos. 6 and 10, asserting they are not supported by the evidence. Finding No. 6 reads:

"After discussing the terms of Mc-Candless' counter offer with him, Assendrup returned to his office and typed out a 'Receipt and Agreement to Purchase' which provided for a total payment of $34,000.00 to be paid as follows:

$1,000.00 deposited as earnest money
$4,000.00 cash at the time of closing the deal

$12,000.00 by assuming the existing mortgage

"Balance bearing $5\frac{1}{2}\%$ interest to be paid by $\frac{1}{3}$ of the gross crop grown on the land each year until paid, the first of such payments to be due and payable May 1, 1961."

Finding No. 10 reads:

"On June 17, 1960, Assendrup again contacted the defendants and advised them he had been unable to get a better offer from McCandless or from anyone else. Thereupon Mr. and Mrs. Schick agreed to accept the sale price offered provided that they receive all of the 1960 crops, the first crop share payment be changed to May 1, 1962, possession not be delivered until December 1, 1960, and the sellers pay all 1960 taxes and expenses. These changes were written in longhand on the back of the receipt and agreement to purchase and were signed by Herman Schick and Vera V. Schick."

Suffice it to say that the record amply sustains these two findings by the court. The initial offer by McCandless provided for the balance "Payable at one-third ($\frac{1}{3}$) gross crop per year"; the court's finding made this applicable to the "gross crops grown on the land". This difference is immaterial, for the parties themselves could reasonably only have intended that the crops would be the crops raised on the premises involved, and there was no evidence of any other intention.

Appellants by other assignments of error attack the court's conclusions of law to the effect that there was a binding bilateral executory contract between the parties, sufficiently definite and certain to be specifically enforced, and that the respondents were entitled to possession of the property.

This court has had before it numerous cases involving the question as to whether a particular contract, option or lease is definite and certain enough to be enforced, and it has been repeatedly held that specific performance will not be granted of an agreement which is incomplete or indefinite in any of its material terms. Nolan v. Grim, 67 Idaho 138, 173 P.2d 74; Hancock v. Elking-

ton, 67 Idaho 542, 186 P.2d 494; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380; Crouch v. Bischoff, 76 Idaho 216, 280 P.2d 419.

In the instant agreement we have certainty and definiteness in regard to the following matters: the parties, the property, the total price, the amount of the initial payments, the amount of the mortgage being assumed, the balance to be paid by deferred payments, the interest rate on the deferred payments, and the time for making of the deferred payments, the possession date, a provision regarding taxes.

▇ Appellants contend, however, that the provision dealing with the deferred balance "Payable at One-Third (⅓) gross crop per year" is so indefinite and uncertain as to make this agreement unenforceable. It is their contention that the term "gross crop per year" is indefinite in that there is no customary meaning as to that term, that there is no agreement that the respondents would plant any crops, that there is no agreement as to what crops would be grown on the land, or whether the crops are to be delivered in kind, or by cash or the valuation date of the crops.

In answer to this contention it must be borne in mind that all parties agree that this property was farming property; that both parties to the agreement were familiar with farming practices. That in appellants' exhibit "2", being the lease agreement with Mr. Schick's brother, Mr. Schick was agreeable to a rent based on "One-half of any and all crops of every kind and nature grown on the premises during the term of this lease." Annually the amount due would be determined by the value of the crops raised the preceding crop season. The additional provision required by the Schicks to be written on McCandless' offer to the effect that the Schicks were to get the 1960 crops, possession to be Dec. 1, 1960, and the first payment date changed to May 1, 1962, was in conformity with farming practices, the annual payment to come from the crops raised the preceding season. It cannot be assumed that a purchaser of farming property would allow his premises to remain idle, and the testimony of McCandless discounts any basis for such assumption.

▇▇ In their affirmative defenses, appellants alleged that the amount of the periodic payments is not fixed by the contract with sufficient clarity to permit specific performance thereof. No evidence was submitted by appellants that one-third of the gross crop would be insufficient to liquidate the deferred balance within a reasonable number of years. The appellants agreed to this provision by their endorsement on the reverse of the McCandless offer, which is shown to have been accepted by the Mc-

Candless' signatures. The issue of whether a contract is just and reasonable is a matter of defense. Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380. Appellants, having owned the property, were in a better position to know the anticipated gross annual crops, and having acceded to the agreement cannot now be heard to complain in the absence of proof of its unfairness.

In further support of their position that the alleged agreement is uncertain and incomplete, appellants argue that the parties contemplated that a formal written agreement be prepared by an attorney with complete escrow instructions to carry out the preliminary statements contained in the receipt and agreement to purchase. The mere intention to reduce an informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol informal contract should be without binding force. Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976; 122 A.L.R. 1217, 12 Am.Jur. Contracts § 25, Restatement Contracts, § 26, see also: Elliott v. Pope, 42 Idaho 505, 247 P. 796. We are of the view that the facts fail to show the parties contemplated being bound only after a more formal agreement was prepared and executed.

The Supreme Court of Montana in Steen v. Rustad, (1957), 132 Mont. 96, 313 P.2d 1014, considered a lease with an option agreement which provided "The balance of $7,000.00 may thereafter be paid by tenant by delivering unto the landlord two-thirds of the crop raised each year, and the market value of the crop share going to landlord shall constitute the payment due and owing on the contract for that year." That court held that such provision was not so uncertain or so incomplete as to render it not specifically enforceable. There the court stated:

"It is equally well-settled that absolute certainty and completeness in every detail is not a prerequisite of a specific performance, only reasonable certainty and completeness being required. Those matters which are merely subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement."

This court in Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380, stated in regard the requirement of certainty and completeness in an option contract:

"The option contract in question is definite and certain as to the parties; the description of the property; the purpose of the contract; the total price to be paid; time and amount of first payment; amount of installments; interest on the deferred payments; time

for execution of deed; and time for delivery of deed.

"The respondents complain that the option is indefinite and uncertain as not showing on what dates the deferred payments are to be made; where the contract and deed are to be placed in escrow; when the plaintiff is to obtain possession; who is to pay the taxes during the term of the proposed contract; whether a quitclaim or warranty deed is to be furnished; what the result would be of a default on the part of purchaser; and whether the payments made would be forfeited in case of default.

"The provision that at the time the option is exercised the purchaser may buy the property by paying $500 *then,* and that the balance is to be paid in three equal *yearly* installments of $500 each, fixes the dates of the deferred payments. The provision that the sellers will place in escrow a deed to the property with some reliable escrow holder, is sufficiently definite and certain for a subsidiary part of the contract.

"The law applicable thereto is an integral part of the contract; and in the absence of covenants to the contrary, determines who is entitled to possession of the property; who is to pay

the taxes; the results which would follow a default; and the type of deed to be furnished where the agreement provides for a deed *conveying* the premises to the purchaser."

See also Nolan v. Grim, 67 Idaho 138, 173 P.2d 74; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351.

Here Assendrup was the real estate agent of the appellants, and he was the one who prepared the particular offer submitted by the respondents to the appellants; and the counter offer endorsed on the reverse of the proposal was prepared by the appellants and not the respondents. "It is a well settled rule of construction that words of a contract will be construed most strongly against the party who uses them (citation). Especially should the rule apply where, as here, respondent seeks to defeat the contract by virtue of such language." Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976.

In equity actions for specific performance no inflexible rule can be laid down to control, for each case must necessarily depend upon its own specific facts. Edmonds v. Gourley, 362 Ill. 147, 199 N.E. 287; Steen v. Rustad, (1957) 132 Mont. 96, 313 P.2d 1014, supra; Friedman v. Winshall, 343 Mich. 647, 73 N.W.2d 248.

We are of the opinion that the trial court was not in error in its conclusion that there

was a binding bilateral executory contract sufficiently definite and certain as to be specifically enforced.

It is urgently contended by appellant that the agreement lacks mutuality of obligation, and is thus unenforceable. That mutuality of obligation is an essential element of a contract has been recognized repeatedly by this court. Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686, and cases therein cited; Thomas v. Cate, 78 Idaho 29, 296 P.2d 1033. Mutuality of obligation as pertains to an executory contract requires that each party to the agreement be bound to perform; if it appears that one party was never bound on his part to do the acts which form the consideration for the promise of the other, there is a lack of mutuality of obligation, and the other party is not bound. Houser v. Hobart, 22 Idaho 735, 127 P. 997, 43 L.R.A., N.S., 410; Zaring v. Lavatta, 36 Idaho 459, 211 P. 557. This doctrine is interwoven with the basic requirement for consideration to support a binding agreement; if one party is not bound to perform his promise, the consideration for the other party's agreement is lacking, 12 Am.Jur., Contracts § 13; 17 C.J.S. Contracts § 100. In the present action, the appellants agreed to sell the respondents the land in question; the respondents obligated themselves to pay for the land by the down payment, assumption of the balance on the mortgage, and the agreement to pay the remaining balance, together with interest, in annual installments, the amount of each installment ascertained by the provisions of $\frac{1}{3}$ of the gross crop. The requirements for mutuality of obligation are present. Appellants contend that they cannot force respondents to farm the premises for farming involves personal services of the respondents, and hence the contract cannot be specifically enforced. That contention fails to consider this agreement in its correct viewpoint. Respondents are required to make payments on the deferred balance. The amount of the payments are determined by one-third of the gross crops. In the event respondents failed to farm, or properly account for the amount of the gross crops or make annual payment based thereon, appellants' remedy by way of breach of contract is available, it being inherent in the agreement that both parties contemplated use of the land by respondents for farming purposes, in keeping with good farmerlike practices in that area. This agreement is not one involving personal services.

The remaining assignments of error have been examined, and after consideration are deemed to be without merit.

Judgment affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.