Philip L. KAYS et al., Plaintiffs,

v.

Lee BRACK, Jr., et al., Defendants.

Civ. No. 1–71–26.

United States District Court,
D. Idaho.

Nov. 24, 1972.

Paul J. Allison of Randall & Danskin, Spokane, Wash., and Robert E. Brown of Brown, Peacock, Keane & Boyd, Kellogg, Idaho, for plaintiffs.

Frank H. Powell, of Cox & Powell, Coeur d'Alene, Idaho, for defendants.

## MEMORANDUM DECISION

J. BLAINE ANDERSON, District Judge.

This is an action for an alleged breach of a contract for the sale of corporate stock and lease of land and buildings upon which the corporate business is conducted. The business is known as Brack Supply Company of Coeur d'Alene, Idaho. Plaintiffs, Philip Kays and Robert Smith, are the buyers under the contract and plaintiffs, E. D. McCarthy, Inc., and Nancy Koron Realty are real estate brokers seeking their commissions from the sale. The defendants are the sole owners of the stock and sellers under the contract.

In July of 1971, the buyers and sellers entered into a sales agreement whereby the plaintiff buyers were to purchase the Brack Supply Company shares of stock from the defendant sellers for $295,000.00 plus or minus closing adjustments, conditioned on the buyers securing financing. In addition, the parties entered into a lease agreement covering the business premises, also dated in July, 1971. The plaintiffs, while actively pursuing the requisite financing, met with certain difficulties and delays. The closing date noted in the sales agreement was modified several times, both by writing and by oral agreement, to meet those delays in obtaining financing. However, the last clear date set for such purposes was October 16, 1971 (Exh. No. 5), and although there is some evidence that it would be extended to October 23, 1971, the Court finds that this was merely discussion and negotiation and no agreement in that regard was reached. On October 14, 1971, witness Ivory, at plaintiffs' request, once again notified the sellers that the buyers could not meet the extended October 16, 1971, closing date because of further delays in obtaining financing. On October 17, 1971, the defendants served notice on the buyers of their intent to cancel the contract, allegedly because of the buyers' delays in obtaining financing. A firm loan commitment was issued by the Small Business Association on October 27, 1971 (Exh. 6) but was not received by the participating bank until either October 28 or 29, 1971, but the defendant sellers refused to negotiate any further.

■ As relevant, paragraph eight of the sales agreement reads:

"The Buyer's agreement to purchase is contingent upon the buyer being able to secure financing acceptable to the buyer, and if the buyer is unable, despite his best efforts, to obtain such financing within 10 days after all sellers have signed this agreement, the buyer shall notify the sellers and either party shall have the right to cancel this transaction."

It is contended by the defendants that such an obligation places no detriment on the buyer and hence his promise is "illusory". The argument further runs that there is, therefore, no enforceable contract because of the doctrine of mutuality. Houser v. Hobart, 22 Idaho 735, 127 P. 997 (1912), McCandless v. Schick, 85 Idaho 509, 380 P.2d 893 (1963). The issue first to be decided is whether a buyer agreeing to purchase "contingent upon the buyer being able to secure financing acceptable to the buyer" is sufficient consideration to bind the buyers. Defendants cite Zaring v. Lavatta, 36 Idaho 459, 211 P. 557 (1922), for the proposition that "satisfaction" promises are illusory and hence the contract is void for want of mutuality of obligations in an action at law for damages. The Court does not view that as an accurate statement of the holding of the case. Rather, *Zaring* held that a contract for the sale of land was incapable of *specific performance* when a buyer who was to obtain a loan was not bound by any certain or definite payment date. At page 462 of 36 Idaho, p. 558 of 211 P. in *Zaring,* the Court stated:

"There seems to be little room for criticism of the amended complaint, and, as we view the case, *it is only necessary to consider the question whether the contract is enforceable in equity*." (emphasis supplied)

In recognition of this rule, Count I of the complaint, seeking specific performance, was dismissed by this Court on the 25th day of September, 1972. However, a decision as to the availability of specific performance is not necessarily determinative of the availability of an action at law for damages. Childs v. Reed, [On Petition for Rehearing] 34 Idaho 450, 202 P. 685 (1921); Gorges v. Johnson, 167 Cal.App.2d 349, 334 P.2d 621 (1959).

■ Sitting as an *Erie* Court, this Court must apply the substantive law of Idaho as decided by the highest court. However, finding no Idaho case law in point and having been furnished none, we must look to other sources to predict the Idaho law on the sufficiency of "satisfaction" clauses. That subject is thoroughly discussed in Mattei v. Hopper, 51 Cal.2d 119, 330 P.2d 625 (Cal.1958). In summary, *Mattei* held that a contract for the sale of property is not illusory nor lacking in mutuality because the agreement was subject to the purchaser obtaining a lease satisfactory to the purchaser. The theory behind the holding is that the purchaser is bound to standards of good faith and honest judgment. Other authorities in accord: Rodriguez v. Barnett, 52 Cal.2d 154, 338 P.2d 907, 911 (1959), an agreement depending on purchasers obtaining satisfactory subdivision map; also Williston, Contracts (3rd Ed.) §§ 44, 105, 675a. More in point is the case of White & Bollard, Inc. v. Goodenow, 58 Wash.2d 180, 361 P.2d 571, (1961). At page 575:

"The respondent's final argument in support of the judgment is that there was no consideration for her promise to sell, because the purchaser's *undertaking was conditioned on his obtaining satisfactory financing, and he could not be forced to do so.* It is true that the purchaser could not be compelled to obtain satisfactory financing, and in this respect the contract is not subject to a decree of specific performance. *However, the promise which he made was, not to secure financing, but to endeavor to do so, and to purchase the property if he was successful. In agreeing to immediately seek and use his best efforts to*

*secure financing, the purchaser promised to do positive acts. This was a legal detriment to him, and is sufficient consideration to support a return promise.* (citation) *If he failed to keep this promise, a suit for damages would lie."* (emphasis supplied)

Similarly, the buyers here promised to use their best efforts to obtain financing. It is the opinion of this Court that such a promise is a detriment to the buyer and would, but for the issue discussed hereinafter, furnish sufficient consideration to support an action for damages. The evidence at trial clearly showed that plaintiff buyers expended considerable effort and time in actively seeking financing with the full knowledge and even assistance of the sellers. There was a detriment in fact and in law.

■ However, there is a reason why the sales agreement was unenforceable. The original agreement, paragraph 8, states:

"The buyer's agreement to purchase is contingent upon the buyer being able to secure financing . . . (within 10 days after all sellers have signed) . . . if the buyer is unable . . . to obtain such financing within 10 days . . . the buyers shall so notify the sellers and either party shall have the right to cancel this transaction."

Such a contingency is clearly a condition precedent to an enforceable and binding contract. When the condition precedent is unfulfilled, there is no enforceable contract. McMinn v. Holley, 86 Idaho 186, 384 P.2d 229 (1963); Mecham v. Nelson, 92 Idaho 783, 451 P.2d 529 (1969); *Goodenow, supra.*

In *Goodenow* the contractual contingency was almost identical with the one at bar. The Court there stated 361 P.2d at 575:

"Here we do not have such an unqualified promise, but rather a conditional promise, and the respondent's

right to collect his fee was also made conditional upon the purchasers obtaining satisfactory financing. *The securing of such financing was a condition precedent. Until it had occurred, the respondent was not obliged to sell, and the purchaser was not obliged to buy. . . ."* (emphasis supplied)

Likewise, in *McMinn, supra* 86 Idaho at 192–193, 384 P.2d at 232, the Court found:

"It is our view that . . . the obtaining of the $7,000 loan was a condition precedent to obligations arising under the initial receipt and agreement to purchase; *such loan not having been obtained the contract was unenforceable."* (emphasis supplied)

It may be conceded that the 10-day provision was tacitly altered by the subsequent modifications of both the closing and settlement dates. However, even with that factor in mind, it nevertheless remains clear that the buyers informed the sellers on or before October 16, 1971, (the last closing date) that they (the buyers) had not yet obtained the loan. According to the contract, such notification gave the sellers the right to cancel, which they exercised on October 17, 1971. This Court need not reach any decision with respect to a breach since no liability could arise under the contract until a loan was secured by the buyers prior to cancellation by the sellers.

■ The next issue deals with the validity of the real estate lease agreement entered into in conjunction with the sales agreement. As the evidence shows, the lease agreement was for a period of ten years and was not signed and acknowledged by the seller, Lee Brack, Jr.'s wife. There is no doubt that under the community property laws of Idaho, a lease for years is an estate in real property and its transfer requires the signature and acknowledgement of both husband and wife or it is void (not voidable) and unenforceable. Idaho Code, Sec. 32–

912; Fargo v. Bennett, 35 Idaho 359, 206 P. 692 (1922); Intermountain Realty Co. v. Allen, 60 Idaho 228, 90 P.2d 704 (1939); Coppedge v. Leiser, 71 Idaho 248, 229 P.2d 977 (1951). Since Lee Brack, Jr.'s wife failed to sign and acknowledge the lease agreement, it was void for want of mutuality.

■ To answer the contentions and issues raised by the parties, it is necessary to discuss the effect of the void lease agreement as it bears upon severability and the effect it has upon McCarthy's and Koron's claim for commissions. It is the contention of the defendants that the lease was an integral and indivisible part of the sales agreement with the affect that it must vitiate the entire agreement. On the other hand, the plaintiff buyers maintain it was distinct and severable from the sales agreement. The lease agreement, designated as Supplement to Sale Agreement, appears on its face to be an integral part of the sales agreement. The lease specifically states that "If that agreement is not consummated, then this agreement shall be void.", clearly indicating that the parties had no intention of conveying one without the other. The "supplement" was prepared by plaintiffs and its title as being a "Supplement to Sale Agreement" is also significant as to intent of the plaintiffs Kays and Smith, as buyers. Lee Brack, Jr., president of the corporation, regarded the sale and lease as being indivisible. See Commission Agreement of July 8, 1971, Exh. No. 1, quoted infra. No commission of any kind was payable unless the whole transaction was completed. Plaintiffs' witness, Ivory, and Brack, Sr. and Jr. testified that the lease was a part of the whole transaction. Furthermore, the evidence at trial produced, at best, conflicting testimony of whether or not there was in fact another similarly situated building and grounds for lease in which the buyers could carry on a business such as the Brack Supply Company without defendants' leasehold. However, any efforts in this direction by Kays was *after* the cancellation. Nevertheless, the primary criterion for determining the severability of the lease and sales agreement is the intent of the parties at the time of contracting. *Coppedge, supra.* At page 252, 229 P.2d at page 979, the Court stated:

"Obviously, if the intention is expressly stated in the contract there is no room for construction. Otherwise, the provisions of the contract, the divisibility of the subject matter, and surrounding circumstances, must be considered in determining whether the parties intended the contract to be entire or severable. Spokane Cattle Loan Company v. Crane Creek Sheep Company, 39 Idaho 801, 230 P. 772."

" 'A contract may both in its nature and by its terms be severable and yet rendered entire by the intention of the parties. We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. *That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire;* otherwise, it would be severable. Wooten v. Walters, 110 N.C. 251, 14 S.E. 734, 736.' " (emphasis supplied)

What clearer statement of the intention to take all or none could there be than "If that agreement (the sale) is not consummated, then this agreement (the lease) shall be void." It is, therefore, held that the lease and sale were entire and incapable of being severed; that it was the intention of the parties at the inception to take the whole and not the several parts; hence, the entire agreement was void. By enforcing less than whole, the Court would be remaking the contract for them. *Coppedge, supra,* p. 253, 229 P.2d 977.

The plaintiff brokers are denied any recovery for their claimed commissions

**1248**

on the sale agreement and the supplemental sale agreement (lease). The brokers cite and rely upon 12 Am.Jur.2d 947, Sec. 204 to the effect that a broker is entitled to his commission if he finds a buyer ready, willing and able to purchase on the terms dictated by the seller. This line of authority is inapposite here. Their agreement for commission (Exh. No. 1) states:

"July 8, 1971

COMMISSION, AGREEMENT

In the event the proposed sale of Brack Supply Company to Mr. Phil Kays is consummated, we agree to pay E. D. McCarthy, Inc. sales commissions as follows:

| | |
|---|---|
| Sale of corporation—$295,000.00 @ 6% | $17,700.00 |
| Lease of property—10 years @ $24,000.00 per year—$240,000.00 | 14,400.00 |
| Commissions to be paid in cash on closing. | $32,100.00 |

/s/ Lee Brack, Jr.
Lee Brack, Jr.

50% above to Nancy Koron Realty

/s/ E. D. McCarthy, Inc.  /s/ J. T. Ivory
  by E. D. McCarthy

          /s/ Gene Henker

          /s/ Nancy Koron Realty."

■ Commissions were wholly dependent upon the sale being "consummated" as to both "the sale of the corporation" and the "lease of the property". Lee Brack, Jr. and McCarthy regarded the "sale" of Brack Supply as embracing both the corporation and the lease. No sale having been consummated and no valid and enforceable contract having been obtained, the brokers are not entitled to commissions. Koron v. Myers, 87 Idaho 567, 577, 394 P.2d 634.

If the parties so agree, this memorandum decision may be regarded as findings of fact and conclusions of law and defendants' counsel will then prepare and submit an appropriate judgment. If the parties cannot so agree, defendants' counsel will prepare and submit findings, conclusions and judgment consistent with the views expressed herein.